UNITED STATES of America,
Plaintiff–Appellee,

v.

Betty June COTTON, Defendant–
Appellant.

No. 93–2595.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 13, 1994.

Decided April 20, 1994.

Suzanne Philbrick, Chesterton, IN, argued, for defendant-appellant.

Mary Jane Lyle, Asst. U.S. Atty., St. Louis, MO, argued (Patricia A. McGarry, on the brief), for plaintiff-appellee.

Before HANSEN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and KOPF,* District Judge.

---

\* The HONORABLE RICHARD G. KOPF, United States District Judge for the District of Nebraska, sitting by designation.

1. The Honorable Stephen B. Limbaugh, United States District Court Judge for the Eastern District of Missouri.

FLOYD R. GIBSON, Senior Circuit Judge.

A jury convicted Betty June Cotton of two counts of possessing cocaine base (crack cocaine) with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (1988). Cotton appeals her conviction and sentence, contending the government failed to prove her intent to distribute, the court[1] erred in allowing a narcotics officer to testify as an expert witness about drug distribution, and the court erred at sentencing by increasing her base offense level. We affirm.

## I. BACKGROUND

A confidential informant told police that crack cocaine was being sold from a particular house and that Cotton was the organizer of the drug sales. Officers watched this house and saw Cotton meet visitors at the door and hand them something in exchange for money. Officers also saw several different men meet visitors at the door and engage in transactions involving money. An informant was sent to purchase crack cocaine at the house, and Cotton and an unidentified man met him at the door. Officers observed Cotton nod her head affirmatively, and then the man sold crack cocaine to the informant.

When officers executed a search warrant, Cotton ran to a bathroom in the basement of the house and threw something into the toilet. Inside the toilet, an officer found a food stamp book[2] and a plastic bag that contained crack cocaine. After searching the bathroom, more bags of crack cocaine were discovered. Officers searched the house and found a triple beam scale, several razor blades, a glass test tube, and a very small plastic bag containing two rocks of crack cocaine. In an upstairs bedrooms, officers recovered another bag of crack cocaine, some money, a cellular telephone, and a loaded handgun. Officers seized a total of 12.38 grams of crack cocaine. Cotton was arrested and advised of her rights, and she admitted

2. Cotton admitted that she never applied for these food stamps, but maintained that they belonged to her.

that all the crack cocaine found in the basement belonged to her. Cotton was then released from custody.

A few months after the first search, officers began surveillance after receiving another tip that crack cocaine was being sold from Cotton's residence. Officers observed several different men conduct transactions with visitors at the door of the house, and they obtained a search warrant. While searching an upstairs bedroom, officers found a razor blade on a dresser and bags containing a total of 6.08 grams of crack cocaine inside the pocket of a pair of women's jeans. In the bedroom that belonged to Cotton's daughter, officers found $1250 in ten and twenty dollar bills. Cotton, who was in the house when the warrant was executed, admitted to one of the officers that the pants and money belonged to her.

At trial, the court permitted Brian Gilmore, a narcotics officer, to testify as an expert witness about drug distribution. Gilmore testified that the amounts of crack cocaine seized from Cotton's residence indicated the drug were intended for distribution. He also testified that drug traffickers frequently receive payment in ten or twenty dollar bills or in food stamps and that certain items found in the house—the scale, razor blade, and cellular phone—were commonly used in the sale of drugs.

Cotton was convicted of two counts of possessing cocaine base with intent to distribute. At sentencing, the court increased Cotton's base offense level two points for use of a weapon and two points for her role in the offense pursuant to U.S.S.G. §§ 2D1.1(b)(1) and 3B1.1(c). The court sentenced Cotton to two concurrent terms of one hundred forty-four months,[3] and she appeals her conviction and sentence.

## II. DISCUSSION

### A. Sufficiency of the Evidence

Cotton admits she was a crack addict and contends the drugs seized from her house were intended for her and her companions' personal consumption, and not for distribution. She argues the relatively small amounts of crack cocaine seized were a few days' supply for the crack users present in the house, and the drug paraphernalia recovered was also consistent with small scale drug usage. Because the amount of drugs seized and the items recovered were consistent with both personal use and distribution, there was insufficient evidence to establish Cotton had the intent to distribute.

In determining whether there is sufficient evidence to support a conviction, we view the evidence in a light most favorable to the government and give the government the benefit of all reasonable inferences which are logically drawn from the evidence. *United States v. Holm*, 836 F.2d 1119, 1122 (8th Cir.1988). "[T]his court may overturn the verdict only if the evidence properly viewed is such that a reasonable-minded jury *must* have entertained a reasonable doubt as to the government's proof of one of the essential elements of the offense." *Id.* (quotation omitted).

There is more evidence against Cotton than the possession of a small amount of a controlled substance. The government presented expert testimony that the amount of crack cocaine and the items seized were consistent with distribution. In addition, officers testified that Cotton admitted the drugs and money belonged solely to her.[4] Officers observed Cotton conducting transactions in exchange for money at the door of the house, and she was present and participated in the sale of crack cocaine to a confidential informant. We find the evidence was sufficient for a reasonable jury to convict Cotton as charged.

### B. Expert Testimony

Cotton contends the court abused its discretion by allowing the government to in-

---

3. The court also imposed concurrent terms of four years supervised release, ordered Cotton to participate in a substance abuse program during her supervised release, and imposed a special assessment of $100.00.

4. Cotton denied making this statement; however, it is the jury's role to assess the credibility of each witness, including the defendant. *United States v. Pardue*, 983 F.2d 843, 845 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 3043, 125 L.Ed.2d 728 (1993).

troduce Detective Gilmore's expert opinion that the amount of crack cocaine seized was indicative of distribution. She argues: (1) Gilmore was not a trained drug expert and not qualified to give an expert opinion; (2) the jury had heard testimony about the amount of a typical crack cocaine dose and had sufficient knowledge to determine whether the amounts present were consistent with distribution; and (3) his testimony addressed the ultimate issue in the case and invaded the province of the jury.

■ We disagree. Federal Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The government established that Gilmore had been with the narcotics division for over six years and had participated in hundreds of drug seizures, arrests, and interrogations. Contrary to Cotton's arguments, an individual can qualify as an expert by possessing knowledge gained from practical experience. *Fox v. Dannenberg,* 906 F.2d 1253, 1256 (8th Cir.1990). More specifically, we have held that the district court has the "discretion to allow law enforcement officials to testify as experts concerning the modus operandi of drug dealers … in areas concerning activities which are not something with which most jurors are familiar." *United States v. Boykin,* 986 F.2d 270, 275 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993) (quotations omitted). Gilmore had specialized knowledge about drug dealing, and his opinion was helpful to the jury in understanding the evidence and determining the facts in issue. For these reasons, his testimony was admissible even if it addressed an ultimate issue to be decided by the trier of fact. *Id.* We conclude the court did not err in admitting Gilmore's expert testimony.

### C. Sentencing Enhancement

### 1. Possession of a Dangerous Weapon

■ Cotton contends the court erred in increasing her base offense two levels for

possession of a dangerous weapon. She argues the gun was found in her daughter's bedroom and belonged to her daughter, who carried it for protection. There is no evidence of a nexus between the weapon and Cotton's criminal activity, and this type of gun, an antique two-shot Derringer, was not commonly used as a "tool of the trade."

■ Pursuant to the sentencing guidelines, "[t]he [enhancement for weapon possession] should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1(b)(1) at comment. (n. 3.). The government has the burden of proving that the weapon was present and that it was not clearly improbable the weapon had a nexus to the criminal activity. *United States v. Bost,* 968 F.2d 729, 732 (8th Cir.1992). We will not reverse the court's finding that Cotton possessed a firearm for purposes of § 2D1.1 unless it is clearly erroneous. *United States v. Luster,* 896 F.2d 1122, 1128 (8th Cir.1990).

In this case, the loaded gun was seized from the same room in which a bag of crack cocaine, a cellular telephone, and $275.00 in cash were found. During the second seizure, Cotton admitted to storing money in her daughter's room. Cotton's argument that it was improbable this "antique" gun was connected to the sale of drugs because the gun was incapable of affording security to a drug dealer is belied by her claim that her daughter carried this gun for personal protection. Her implication that the gun was merely a collector's item is further undercut by the fact that the gun was found loaded and in the proximity of controlled substances—unlikely conditions in which to find a collector's item. Although most drug dealers do not carry derringers, it is not "clearly improbable" that this gun was used for protection, and the derringer certainly constitutes a "weapon" within the meaning of § 2D1.1(b)(1). Accordingly, the enhancement was not clearly erroneous.

### 2. Leadership Role

■ Cotton contends the court erred in increasing her base offense level two levels for her leadership role in the offense. She argues there was insufficient evidence that she was a leader or supervisor.

■ The sentencing guidelines provide for a two level increase "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity...." U.S.S.G. § 3B1.1(c). We will reverse the determination of a defendant's role in a criminal activity only if it is clearly erroneous. *United States v. Willis*, 997 F.2d 407, 419 (8th Cir. 1993), *cert. denied,* — U.S. ——, 114 S.Ct. 704, 126 L.Ed.2d 670 (1994).

Cotton was observed conducting transactions and expressing her approval when crack cocaine was sold to a confidential informant. She also admitted that the drugs and money belonged to her. The court determined that unidentified persons were involved in selling illegal narcotics at the defendant's residence.[5] The court's finding that Cotton was a leader of these individuals is not clearly erroneous.

### III. CONCLUSION

We conclude there was sufficient evidence to convict Cotton, and the district court did not err in admitting expert testimony on drug distribution or in enhancing Cotton's base offense level. Therefore, Cotton's conviction and sentence are affirmed.

---

**5.** Although the court misstated the role of the two individuals who were found in the kitchen during the first search, there is ample evidence that Cotton held a leadership role over the unidentified persons who were distributing crack cocaine from the door of her house.