53 F.3d 888
 UNITED STATES of America, Appellee,
v.
Robert L. ALEXANDER, Jr., also known as Junior Alexander, Appellant.
UNITED STATES of America, Appellee,
v.
Robert J. O'BRIEN, also known as Grady O'Brien, Appellant.
UNITED STATES of America, Appellee,
v.
Bernard N. KVAMME, Jr., Appellant.
 Nos. 94-2520, 94-2540 and 94-2646.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 13, 1994.
Decided April 17, 1995.
 
 Mark V. Meierhenry, Sioux Falls, SD, argued for appellant.
 Richard H. Johnson, Sioux Falls, SD, argued for appellant O'Brien.
 Barry Voss, Minneapolis, MN, argued for appellant Kvamme.
 Dennis Ray Holmes, Pierre, SD (Karen E. Schreier, Sioux Falls, SD, on the brief), for appellee.
 Before McMILLIAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and SHAW,* District Judge.
 JOHN R. GIBSON, Senior Circuit Judge.
 
 
 1
 Robert L. Alexander, Jr., Robert J. O'Brien, and Bernard N. Kvamme, Jr., having pleaded guilty on drug charges, appeal their sentences. The three were indicted in a twenty-four count indictment. Alexander pleaded guilty to one count of conspiracy to violate 21 U.S.C. Sec. 841(a)(1) and Sec. 846 (1988) and one count of possessing 100 pounds of marijuana with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2 (1988). He was sentenced to 324 months in prison, with supervised release of five years. O'Brien pleaded guilty to two counts charging possession of five and twelve pounds of marijuana, respectively, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. O'Brien received sentences of 60 months on each count, to be served consecutively, and supervised release of three years. Kvamme pleaded guilty to two counts, charging possession of 100 and 300 pounds of marijuana, respectively, with intent to distribute. 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. He was sentenced to a term of 60 months imprisonment and five years supervised release. All three argue that the district court[1] erred in applying the Sentencing Guidelines. We affirm all three sentences.
 
 
 2
 The evidence at the sentencing hearing revealed that Alexander operated a drug distribution business in the South Dakota-Minnesota area, supplying mostly marijuana. Alexander dealt in both home-grown South Dakota marijuana and marijuana that he would bring up north from Arizona or Arkansas. When picking up marijuana from Arizona or Arkansas, Alexander would ordinarily drive down with hired helpers in two vehicles. Alexander would obtain the marijuana, then have the helper drive the drugs up north in one car, while Alexander came home in the other car. Kvamme and O'Brien were two of these helpers. After bringing the marijuana back home, Alexander then distributed it to middlemen drug dealers. O'Brien helped with these transactions, making deliveries and collecting payments. We will discuss the facts in further detail as needed in the legal analysis.
 
 I.
 
 3
 Alexander first asserts that the district court erred in enhancing his sentencing level for obstruction of justice, USSG Sec. 3C1.1 (Nov. 1994),[2] and for possession of a firearm, USSG Sec. 2D1.1(b)(1).[3] He argues that the court erred in finding the facts warranted these enhancements. We review such findings under the clearly erroneous standard. United States v. Cotton, 22 F.3d 182, 185 (8th Cir.1994) (USSG Sec. 2D1.1(b)(1)); United States v. Armstrong, 992 F.2d 171, 174 (8th Cir.1993) (USSG Sec. 3C1.1). Alexander also argues that section 3C1.1 is not applicable by its terms to the situation in this case; we review this legal question de novo. See United States v. West, 942 F.2d 528, 530 (8th Cir.1991).
 
 
 4
 The court based its obstruction of justice ruling on acts of Alexander and Kvamme in giving money to James Aldrich. Aldrich had gone on one of the trips to Arizona to pick up 300 pounds of marijuana in December 1991 with Alexander and Kvamme. His compensation was forgiveness of a $2,500 drug debt. Also, after the arrest of one of Alexander's confederates in February of 1992, Aldrich attended a meeting of several people in the drug ring, including Kvamme and Alexander. After the meeting, Alexander entrusted Aldrich with $25,000 cash to take to Yankton, South Dakota for safekeeping. Shortly after this, police searched Aldrich's home and found drugs there. After the search, Aldrich called Kvamme and asked him for money to "take off" to "avoid prosecution." Kvamme and Aldrich met twice. The first time Kvamme frisked Aldrich to make sure he wasn't wearing a wire. Kvamme advised Aldrich not to run away, but Aldrich refused his advice. Kvamme ultimately gave Aldrich $1,000, and Aldrich fled the jurisdiction, taking Alexander's truck without permission. While a fugitive, Aldrich ran out of money, so he met Alexander and Kvamme in Sterling, Colorado. Alexander got his truck back and gave Aldrich $300 more.
 
 
 5
 Based on these facts, the court found Alexander had helped Aldrich to flee and imposed a two level increase on Alexander's offense level. Aldrich was at that point enmeshed in legal difficulties. He was obviously in a position where he was likely to benefit from cooperation with the police. Aldrich had knowledge of Alexander's crimes, and for Alexander to finance Aldrich's flight, at the very least, supports an inference that Alexander meant to prevent Aldrich from telling police what he knew. The court's finding of obstruction of justice is not clearly erroneous.
 
 
 6
 Alexander makes a closely related legal argument that financing a witness' flight is not the type of activity covered by section 3C1.1. While fleeing from arrest oneself may not be "obstruction of justice" under section 3C1.1, compare United States v. Alpert, 28 F.3d 1104 (11th Cir.1994) (en banc) and United States v. Mondello, 927 F.2d 1463, 1467 n. 4 (9th Cir.1991), the acts in this case qualify as obstructing justice under section 3C1.1 not because Alexander helped Aldrich to flee justice, but because he attempted to put Aldrich out of the government's reach as a witness. This is analogous to asking a witness not to cooperate, which does come within section 3C1.1. See United States v. Garcia, 13 F.3d 1464, 1471 (11th Cir.1994), cert. denied, --- U.S. ----, 114 S.Ct. 2723, 129 L.Ed.2d 847 (1994). We hold Alexander's acts fall within section 3C1.1.
 
 
 7
 Alexander also contends that the court erred in finding an adequate connection between guns found at Alexander's house and the drug conspiracy. Application note 3 to USSG Sec. 2D1.1 states:
 
 
 8
 The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.
 
 
 9
 Police found two shotguns in Alexander's bedroom, one on each side of the bed. There were shells for the guns in the room, and a false bottom "stash can" containing methamphetamine and eight $100 bills. Alexander had carried on his drug business in that bedroom.
 
 
 10
 Alexander argues that the guns could have been used for hunting or could have belonged to his girlfriend who also lived in the house. Given the proximity of the guns to drugs, the location of the guns where they could be reached (rather than being stored in a closet), and the transaction of drug business at the house, the district court could find it was not "clearly improbable" that the guns were connected with Alexander's drug business. See Cotton, 22 F.3d at 185 (proximity of antique gun to drugs sufficient to tie it to criminal activity, despite fact that it was in defendant's daughter's room); United States v. Lucht, 18 F.3d 541, 555 (8th Cir.) (proximity of handguns and one automatic weapon to drugs sufficient to warrant section 2D1.1(b)(1) increase), cert. denied, --- U.S. ----, 115 S.Ct. 363, 130 L.Ed.2d 316 (1994); United States v. Rowley, 975 F.2d 1357, 1363-64 (8th Cir.1992) (proximity of automatic weapons to drug, both "quickly accessible" in bedroom, warranted increase).
 
 
 11
 Alexander next argues that the court erred in calculating the amount of drugs attributable to him. The court found a total of 1,379.02 kilograms of marijuana to be attributable to Alexander (including small amounts of other drugs that were converted to equivalent weights of marijuana under the Guidelines). Of that amount, 907.2 kilograms, or 2,000 pounds of marijuana, was established by the testimony of Robert Loeschke. Loeschke testified that he bought marijuana from Alexander for resale. Between January 1988 and January 1990, Loeschke said, he obtained between 2,000 and 4,000 pounds of marijuana from Alexander. The court accepted Loeschke's testimony, choosing the low end of his estimate.
 
 
 12
 Alexander argues that Loeschke contradicts his own estimate of 2,000 pounds by his testimony that in the relevant time period he "probably [made] 300 to 500 thousand" dollars. Loeschke stated that he made between $300 and $800 a pound profit. Alexander's attorney asked: "Well, would I be fair in assuming that a 400 dollar per pound profit would be a fair average?", to which Loeschke said, "Yeah." These numbers, Alexander argues, indicate that Loeschke would have sold far less than 2,000 pounds to make a $300,000-500,000 profit. This testimony is too vague to lead to the conclusion Alexander draws from it. At most, it injects questions for the district court to resolve in its fact findings.
 
 
 13
 Alexander argues that the district court was not justified in finding Alexander responsible for two ounces of "crystal" based on Loeschke's testimony that he received such drugs from Alexander. The district court counted this "crystal" as methamphetamine rather than amphetamine, which is weighted less under the guidelines. Alexander says that the "crystal" could have been amphetamine. We do not in fact see in the record any evidence about what chemical Loeschke meant by "crystal." The government responds that Alexander did not object to the assertion in the presentence investigation report that Alexander gave Loeschke methamphetamine; but the p.s.i. report filed with this court makes no such assertion.
 
 
 14
 On the basis of the "crystal" testimony, the court held Alexander responsible for two ounces of methamphetamine, which is equivalent to 56.7 kilograms of marijuana. Subtracting this amount from the total for which Alexander was held responsible does not affect his offense level under USSG Sec. 2D1.1(c)(4), and consequently has no effect on his sentencing range. Therefore, Alexander could only argue that the inclusion of the amount for the crystal affected the judge's choice of a sentence within the sentencing range. But in fact, the district court found that Alexander's sentencing range was 360 months to life, yet sentenced him to only 324 months. Alexander suffered no harm from the inclusion of the crystal in the drug calculation.
 
 
 15
 Alexander challenges the court's inclusion of 255 and 300 pounds of marijuana from the testimony of Raymond Bennett and James Aldrich, respectively. We have reviewed the pertinent testimony, and there is ample basis for the district court's conclusions.
 
 
 16
 Alexander argues that the district court erred in assessing two criminal history points under USSG Sec. 4A1.1(e), for engaging in crime less than two years after release from a previous imprisonment. Alexander does not dispute that he was shown to have engaged in the conspiracy for which he was convicted here within two years of his release from prison; therefore, this point is meritless.
 
 
 17
 Alexander argues that the district court should have departed downward because his criminal history category over-represented the seriousness of his crimes. We may not review a district court's exercise of discretion not to depart downward. United States v. Brown, 18 F.3d 1424, 1425 (8th Cir.1994) (per curiam).
 
 II.
 
 18
 O'Brien argues that the court erred in accepting testimony of various witnesses concerning the amount of drugs attributable to him.[4] The district court found O'Brien responsible for 525 kilos of marijuana. O'Brien's challenges to this finding hinge on the credibility of the various witnesses. The district court's credibility determinations are not clearly erroneous.
 
 
 19
 O'Brien also objects to the two-level increase he received under USSG Sec. 3B1.1(c)[5] for his role in the offense. We will reverse a role-in-the-offense determination only if clearly erroneous. Cotton, 22 F.3d at 186.
 
 
 20
 The district court found O'Brien was "a major player in Mr. Alexander's drug organization." The evidence indicates O'Brien was Alexander's lieutenant. He delivered drugs to middlemen and picked up their money. He and another man transported marijuana from Arizona without Alexander's supervision. He made a debt collection call on one middleman who was in jail. He also helped break a 100-pound quantity into "wholesale" quantities for distribution to other dealers. O'Brien took a degree of responsibility for the distribution business that warrants the two-level increase. See United States v. Edwards, 994 F.2d 417, 424 (8th Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 701, 126 L.Ed.2d 667 (1994).
 
 III.
 
 21
 Kvamme argues, as did Alexander, that the district court erred in finding he obstructed justice in assisting Aldrich to flee. The same facts that warrant Alexander's obstruction of justice increase also support Kvamme's. Kvamme makes the additional argument that his obstruction of justice did not relate to his offense, but to Aldrich's. This misses the point. The court enhanced Kvamme's sentence not because he kept Aldrich from answering to justice, but because he sought to keep Aldrich from cooperating with the government against Kvamme.
 
 
 22
 Kvamme also argues that he was a minor participant and was entitled to a reduction on this ground. Kvamme was convicted for making two trips to Arizona, bringing up loads of 100 and 300 pounds of marijuana. The 100-pound shipment was broken up for resale at Kvamme's farm. We have already recounted Kvamme's dealings with Aldrich. Aldrich also testified that Kvamme attended the meeting of at least eight conspirators at the Holiday Inn in Sioux Falls, Iowa, after one of the dealers was arrested. Though Kvamme was not the ring leader, see West, 942 F.2d at 531, he has not shown his involvement was "less culpable than most other participants." USSG Sec. 3B1.2, comment. (n. 3); see United States v. Dinges, 917 F.2d 1133, 1135 (8th Cir.1990) (defendant has burden of proving applicability of guideline section which decreases offense level).
 
 
 23
 Kvamme also argues that the district court erred in finding him responsible for possessing 400 pounds of marijuana. This argument is utterly meritless, since Kvamme specifically pleaded guilty to possessing this amount, and he himself told the court that the Factual Statement reciting this amount was correct.
 
 
 24
 * * *
 
 
 25
 We affirm the sentences the district court imposed.
 
 
 
 *
 The HONORABLE CHARLES A. SHAW, United States District Judge for the Eastern District of Missouri, sitting by designation
 
 
 [1]
 The Honorable John Bailey Jones, Chief United States District Judge for the District of South Dakota. Judge Jones took senior status on January 1, 1995, after this case was tried
 
 
 [2]
 USSG Sec. 3C1.1 provides: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels."
 
 
 [3]
 USSG Sec. 2D1.1(b)(1) provides: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."
 
 
 [4]
 O'Brien pleaded guilty to one count involving possession of five pounds of marijuana and a second count involving possession of twelve pounds of marijuana. He does not dispute that the possession of other amounts on other occasions was "relevant conduct" under Section 1B1.3
 
 
 [5]
 USSG Sec. 3B1.1(c) provides: "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity ... increase by 2 levels."