UNITED STATES of America, Appellee,

v.

Koby Kirk McFARLANE, Sr., Appellant.

No. 94–3949NDF.

United States Court of Appeals,
Eighth Circuit.

Submitted May 17, 1995.

Decided Sept. 5, 1995.

**1236**

David J. Huff, argued, Fargo, ND, for appellant.

Keith W. Reisenauer, argued, Fargo, ND, for appellee.

Before FAGG, Circuit Judge, and WOOD, Jr.,* and JOHN R. GIBSON, Senior Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge:

Koby Kirk McFarlane, Sr., challenges the district court's decision to increase his offense level by three levels for his role as a manager or supervisor of a criminal enterprise involving five or more participants pursuant to U.S.S.G. § 3B1.1(b). For the reasons provided below, we remand for resentencing.

## I. BACKGROUND

Law enforcement officials began investigating McFarlane after an informant started making small purchases of marijuana from him. The officials eventually obtained a warrant to search a storage locker rented by McFarlane under an alias. The search of the locker culminated in the seizure of approximately twenty pounds of marijuana and a small quantity of methamphetamine. A later search of McFarlane's residence uncovered approximately thirty-two additional grams of marijuana. Officials also searched a safety deposit box rented by McFarlane and seized a large quantity of coins, silver, and United States currency.

On June 29, 1994, McFarlane was indicted on four counts of conspiracy to possess with intent to distribute and distribution of a controlled substance [1] in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 846. McFarlane subsequently entered into a plea agreement whereby he pleaded guilty to one count of conspiring to possess with intent to distribute marijuana and distribution of marijuana; the United States agreed to move to dismiss the remaining three counts of the indictment. The parties to the plea agreement stipulated that McFarlane's base offense level under the U.S. Sentencing Guidelines was 22. See U.S.S.G. § 2D1.1(c)(11) (setting a base offense level of 22 for offenses involving at least 60 kilograms, but less than 80 kilograms, of marijuana). The United States further agreed to recommend a three-level downward adjustment in light of McFarlane's clear acceptance of responsibility, U.S.S.G. §§ 3E1.1(a) and (b)(2), and to recommend a sentence at the low end of the guideline range. In the plea agreement, McFarlane specifically admitted to distributing large quantities of marijuana to at least seven individuals, not including the government informant.

The United States Probation Office then conducted a presentence investigation. As a result of this investigation, the U.S. Probation Office recommended a three-level upward adjustment to McFarlane's base offense level pursuant to U.S.S.G. § 3B1.1(b) after it concluded that McFarlane was a "manager or supervisor" of a criminal activity involving five or more participants within the meaning of that section. McFarlane objected to the proposed adjustment, arguing that there was no evidence in the record to support the finding that he had managed or supervised another participant in the criminal activity.

The sentencing court chose to accept the government's recommended three-level decrease for acceptance of responsibility as well as the U.S. Probation Office's recommended

---

* The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit Court of Appeals, sitting by designation.

1. Three counts concerned the controlled substance marijuana, and one count concerned the controlled substance methamphetamine.

three-level increase for management or supervision of a criminal activity. As a result, McFarlane's base offense level remained at 22. The court then sentenced McFarlane to forty-one months imprisonment, the minimum allowed under the Guidelines for a category I offender.

McFarlane then filed this appeal, alleging that the U.S.S.G. § 3B1.1 requires proof that a defendant managed or supervised another participant before an adjustment may be effectuated and that such proof was lacking in this case.

## II. STANDARD OF REVIEW

The district court's determination of a defendant's role in an offense is a factual matter and we "shall accept the findings of fact of the district court unless they are clearly erroneous." 18 U.S.C. § 3742(e). *See also United States v. Harry,* 960 F.2d 51, 53 (8th Cir.1992). The applicability of a section of the Sentencing Guidelines to a particular case is a question of law which we review *de novo. United States v. Alexander,* 53 F.3d 888, 890 (8th Cir.1995) (citation omitted).

## III. DISCUSSION

### A.

The district court increased McFarlane's offense level by three levels pursuant to U.S.S.G. § 3B1.1. Section 3B1.1 provides:

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or

more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.[2]

Standing alone, this section is somewhat ambiguous: It could be read to mean either (1) "If the defendant was a manager or supervisor of five or more participants in a criminal enterprise, increase by 3 levels"; or (2) "If the defendant was a manager or supervisor of a criminal enterprise and if that criminal enterprise involved five or more participants, increase by 3 levels." The key distinction between these interpretations being the necessity, or lack thereof, of the defendant's management or supervision of other persons.

Consequently, a split developed among the circuits on this issue. *Compare United States v. Fuentes,* 954 F.2d 151, 153 (3d Cir.), *cert. denied,* 504 U.S. 977, 112 S.Ct. 2950, 119 L.Ed.2d 573 (1990) (holding that the defendant must exercise control over other persons for § 3B1.1 to apply); *United States v. Mares–Molina,* 913 F.2d 770, 773 (9th Cir. 1990) (same); *United States v. Fuller,* 897 F.2d 1217, 1220 (1st Cir.1990) (same); *with United States v. Chambers,* 985 F.2d 1263, 1267 (4th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 107, 126 L.Ed.2d 73 (1993) (holding that the defendant need not necessarily exercise control over another person for § 3B1.1 to apply). We counted ourselves among this latter camp, having held that a defendant need not have "directly controlled his coconspirators" in order for a § 3B1.1 adjustment to be applicable. *United States v. Grady,* 972 F.2d 889 (8th Cir.1992) (per curiam). *See also Harry,* 960 F.2d at 54 ("[A] defendant need not have directly controlled others in the organization to have functioned as an organizer [under U.S.S.G. § 3B1.1(a) ]."); *but see United States v. Rowley,* 975 F.2d 1357, 1364 (8th Cir.1992) (stating that " '[t]he

---

**2.** The Guidelines do not define the terms "organizer or leader" or "manager or supervisor," but application note 4 to § 3B1.1 does provide some guidance:

In distinguishing a leadership or organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision mak-

ing authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

defendant must have exercised some degree of control over others involved in the commission of the offense,' " but apparently basing the decision to vacate the § 3B1.1 adjustment on the fact that the defendant was the sole participant in the offense) (quoting *Fuller*, 897 F.2d at 1220).

■ In order to clarify the operation of § 3B1.1, the Sentencing Commission amended the commentary to this section, effective November 1, 1993, by adding the following application note:

> 2. To qualify for an *adjustment* under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An *upward departure* may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

U.S.S.G. app. C, at 349 (Nov. 1993) ("Amendment 500") (emphasis added). In so doing, the Sentencing Commission was acting as Congress intended: "[I]n charging the Commission 'periodically [to] review and revise' the Guidelines, Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest." *Braxton v. United States*, 500 U.S. 344, 348, 111 S.Ct. 1854, 1857–58, 114 L.Ed.2d 385 (1991) (quoting 28 U.S.C. § 994(*o*)).

The Supreme Court held in *Stinson v. United States*, — U.S. ——, ——, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993), that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Neither party to this appeal has argued that

Amendment 500 is inconsistent with U.S.S.G. § 3B1.1 or violative of the Constitution or any federal statute, and we do not detect any such deficiency. Therefore, we find that the language of Amendment 500 is binding on our application of U.S.S.G. § 3B1.1 to the facts of this matter.

### B.

Under the facts of this case, therefore, if McFarlane's sentence was to be increased, it would have to be by means of an upward departure as McFarlane "did not organize, lead, manage, or supervise another participant, but [instead] exercised management responsibility over the property, assets, or activities of a criminal organization." Amendment 500. It is true that there were five or more "participants" involved in this marijuana distribution operation,[3] but the evidence of record is insufficient to show that McFarlane exercised any degree of managerial or supervisory control over these other individuals.[4] As the district court stated at McFarlane's sentencing hearing: "I don't believe that there is adequate evidence to indicate that this man controlled five or more participants...." As we are not "left with the definite and firm conviction that a mistake has been made," we uphold this finding. *Harry*, 960 F.2d at 53 (citations omitted).

The district court explicitly based its decision to increase the offense level on McFarlane's control of the assets and activities of the criminal activity:

> I think, as the prosecutor has argued, that he is controlling the source. I think he is controlling the storage. I think he is controlling the price. I think he is controlling the drugs even though he may not be controlling the people who are the participants.
>
> . . . .

---

3. McFarlane's selling of marijuana to at least seven other individuals unquestionably rendered them "participants" in the marijuana distribution organization. As application note 1 to § 3B1.1 states: "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted."

4. We reject the notion that, by merely selling a controlled substance to an individual, the seller thereby necessarily becomes the manager or supervisor of the buyer.

So this man in my mind is controlling the drugs that are going to other people that he's selling to who are going to be sellers. I think that qualifies as a managerial or supervisory role.

The problem with the district court's judgment is that it nowhere indicated that a "departure" was being effectuated. Instead, both the district court and the government—in its position paper before the sentencing court and in its brief before this court—discoursed only in terms of an "adjustment."

The difference between these two devices is not inconsequential. If the sentencing court concludes that a defendant has managed or supervised one or more participants in a criminal enterprise involving five or more total participants, an adjustment is mandated—the court must enhance the defendant's sentence by three levels. *See United States v. Smith*, 49 F.3d 362, 367 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2009, 131 L.Ed.2d 1008 and *cert. denied,* —— U.S. ——, 115 S.Ct. 2264, 132 L.Ed.2d 269 (1995). If, on the other hand, the sentencing court concludes that the defendant has merely exercised a managerial role over the property, assets, or activities of a criminal enterprise involving five or more participants, the court is possessed of a certain degree of discretion regarding the enhancement of the defendant's sentence—"[a]n upward departure *may* be warranted." Amendment 500 (emphasis added).

Furthermore, under the Sentencing Guidelines, departures are the exception—not the rule. *See, e.g., United States v. Johnson,* 908 F.2d 396, 399 (8th Cir.1990). The sentencing court may only impose a sentence which departs from the range established by the Guidelines if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). *See also* U.S.S.G. § 5K2.0. "Thus, it is only in the extraordinary case—the case that falls outside the heartland for

the offense of the conviction—that the district court may abandon the guideline sentencing range and impose a sentence different from the sentence indicated by mechanical application of the guidelines." *United States v. Jackson,* 30 F.3d 199, 201 (1st Cir. 1994) (citation omitted). *See also United States v. Simpson,* 7 F.3d 813, 819 (8th Cir. 1993) (citations omitted). The Sentencing Commission has attempted to aid sentencing courts by explicitly identifying certain categories of factors that the Commission was not able to fully take into account when it formulated the Guidelines. *See* U.S.S.G § 5K2.1–.16. Amendment 500 identifies the management of the property, assets, or activities of a criminal organization by a defendant who did not manage or supervise any participants of the criminal activity as another of these categories.

## C.

■ By imposing a sentence of forty-one months—the minimum sentence for a criminal history category I, offense level 22 defendant—the district court exercised what discretion it knowingly possessed in favor of McFarlane. The district court also expressed empathy for McFarlane: "Mr. McFarlane, I find you a relatively pathetic character. I feel sorry for you because of your illness.[5] ... And I understand you've made good progress in changing your mind, your conver[sion] so-to-speak, but I don't have the same powers as the good Lord. I can't forgive everything." In fact, the district court was possessed of the discretion to "forgive" McFarlane for his management of the assets and activities of this criminal organization under Amendment 500.

This, in brief, is the difficulty with the sentence imposed by the district court as we see it: We cannot be certain on this record that the court would have increased McFarlane's offense level under § 3B1.1 if it had been fully conscious of the discretionary nature of this decision. We acknowledge that this situation does not call for a remand as clearly as the analogous one contemplated in *United States v. Evidente,* 894 F.2d 1000 (8th

---

**5.** McFarlane had additionally argued before the district court that a departure was warranted for extraordinary physical impairment under U.S.S.G. § 5H1.4 in light of his severe asthma.

The district court denied McFarlane's request for a departure on this ground and McFarlane has not appealed that decision.

Cir.), *cert. denied,* 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990).[6] The district court did not explicitly state that it would not have increased McFarlane's sentence if it had not been compelled to. The instant situation is, however, too close for comfort. We cannot state with confidence that the "District Court clearly was aware that it had the authority" to not increase McFarlane's offense level. *Id.* at 1005. Accordingly, we remand this matter for resentencing.[7]

## IV. CONCLUSION

For the reasons set forth above, we VACATE the sentence imposed by the district court and we REMAND for resentencing in accordance with this opinion.

---

**6.** After refusing to review the district court's decision to not depart downward, the *Evidente* court hypothetically stated:

> Had the District Court somehow believed it lacked power to exercise discretion to grant [the defendant] a downward departure from the applicable guideline range, a different case would have been presented.... If we determined that the sentencing court had such authority, we would remand the case to that court and direct it to consider whether on the facts of the case the court wishes to exercise its discretion in favor of a departure.

894 F.2d at 1005 (citation omitted).

**7.** By this opinion, we do not mean to comment on the quantity or quality of evidence pertaining to McFarlane's status as a manager of the property, assets, or activities of this criminal enterprise. We note in this regard only that, if the district court should decide to depart on remand, "[t]he departure must be based on factual findings supported by the record." *Simpson,* 7 F.3d at 819 (citation omitted).

We further note that the district court was incorrect when it stated that "I cannot impose a two level increase because of the number of participants." The district court believed that, since there were five or more participants involved here, it could not impose the two level increase authorized by § 3B1.1(c). The upward departure authorized by the latter half of Amendment 500 is not, however, tied to the tripartite adjustment scheme detailed in §§ 3B1.1(a)-(c). After all, "[c]ircumstances that may warrant departure from the guidelines pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The controlling decision as to whether and to what

---

extent departure is warranted can only be made by the courts." U.S.S.G. § 5K2.0. In other words, after concluding that an upward departure is warranted under Amendment 500, the district court is then required to determine a reasonable increase—an increase which may be higher or lower than the increase authorized under §§ 3B1.1(a)-(c), depending upon the facts of the individual situation. The number of participants involved in the criminal activity is but one factor in this analysis.

Once an individually tailored departure has been effectuated, it is then subject to a three-step review. *See, e.g., United States v. Crumb,* 902 F.2d 1337, 1339 (8th Cir.1990).

> Under the first step, a reviewing court considers, as a question of law, whether the circumstances the district court relied on for departure are sufficiently unusual in kind or degree to warrant departure. Second, the court considers, as a question of fact under a clearly erroneous standard of review, whether the circumstances justifying departure actually exist. Finally, if the sentence passes the first two tests, the court determines if the sentence is reasonable. In making this determination, the reviewing court gives due regard to the district court's "superior 'feel' for the case" and does not lightly disturb the district court's decision to depart or the degree of departure.

*Id.* (quoting *United States v. Diaz–Villafane,* 874 F.2d 43, 50 (1st Cir.), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989)). Since Amendment 500 expressly identifies the management of a criminal organization's property, assets, or activities as a category of conduct for which a departure is appropriate, the first step of this review will be largely perfunctory.