# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2154

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Thomas P. Lalley, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  November 14, 2000

Filed:  July 13, 2001

_____

Before MORRIS SHEPPARD ARNOLD and JOHN R. GIBSON, Circuit Judges,
and GOLDBERG,[1] Judge.

_____

JOHN R. GIBSON, Circuit Judge.

Thomas P. Lalley appeals his conviction and sentence for conspiring to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (h) (1994).  He challenges the district court's instructions on willful blindness, on the elements of the offense, and on the government's burden of proof.  He also contends that he should not have received a three-level aggravating role enhancement for being a supervisor or

_____

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

manager in the offense, that he should have been granted mitigating role and acceptance of responsibility reductions, and that the district court should have departed downward on his sentence. We affirm his conviction and, for the reasons provided below, vacate his sentence and remand for resentencing.

Lalley is the owner of Theodore's Bar and Grill in Omaha, Nebraska. He was indicted after federal agents discovered that his bar cashed more than seventy checks stemming from a scheme that resulted in the embezzlement of approximately $2.66 million from Oglala Lakota College, a tribal college in South Dakota that receives federal funding. In the early 1990s, Arlynn Knudsen, the vice president of business at the college, and Daniel Banuelos, an auditor for the college, devised the scheme. Banuelos set up two bank accounts in California under bogus company names. Knudsen falsified invoices and other related documents to process checks to the companies for deposit into the accounts. The two embezzled $768,316.31 in this manner.

After the California accounts were established, Knudsen approached his cousin Jerry Godfrey about setting up bank accounts for more bogus companies. At Knudsen's direction, Godfrey opened an account in Omaha for a fictitious business called "Precise Printing" and an account in Sioux Falls, South Dakota for "Direct Expressions." Between 1991 and 1994, Knudsen funneled $1,496,716.84 to Godfrey using the same methods as he did with Banuelos. Knudsen also sent Godfrey $29,157.19 in undisbursed payroll checks from the college. In another part of the scheme, Knudsen funneled $391,954.91 to accounts set up by John Bad Wound, an employee of the college, and his wife Margaret Bad Wound.

Once the money was deposited into the accounts, it would be turned into cash or invested and fifty to seventy percent of the proceeds sent back to Knudsen. Early on, Godfrey wrote checks for $4,900 in cash on the Precise Printing account, believing that sums of $5,000 or more would trigger federal reporting requirements. Knudsen

thought the funds were not being withdrawn quickly enough and suggested that Godfrey cash checks at Theodore's Bar and Grill. Godfrey, who did not have a steady job at the time, spent most of his days there and was friends with Lalley, its owner. Godfrey asked Lalley if he would be interested in making some extra money. He told Lalley that he needed a place to cash checks because he feared the bank would become suspicious if he went there every day to withdraw $4,900 and that cashing the checks at the bar would get the money out faster. Lalley said he would have to check with his accountant. Several days later, Lalley told Godfrey to start writing checks.

During the next several years, Godfrey wrote more than sixty checks to the bar for various amounts, sometimes as high as $20,000 or more. He forged at least ten different payees' names on Oglala Lakota College payroll checks. Lalley stamped the checks for deposit and added them to the bar's daily receipts. Lalley would then write cash change orders from the bar account and distribute money to Godfrey over several days, usually in amounts of $5,000 or less. In all, Lalley negotiated, deposited, and cashed $630,894.50 worth of checks from Godfrey.[2] Between August 1991 and January 1995, the checks representing embezzled funds comprised approximately thirty-nine percent of the total deposits for the bar.

Special agents for the Internal Revenue Service investigated the scheme and traced the funds back to Lalley's bar. Lalley was indicted on one count of conspiracy to commit money laundering. A jury found him guilty, and the district court sentenced him to seventy months of imprisonment and ordered him to pay $630,894.50 in restitution. This appeal followed.

---

[2]The evidence at trial placed the value of the checks at $593,061.50. The $630,894.50 figure, which was used at sentencing and which is uncontested by Lalley, includes additional checks discovered during the presentence investigation.

I.

Lalley contends several errors in the jury instructions require reversal of his conviction. We review the district court's jury instructions for abuse of discretion. United States v. Beckman, 222 F.3d 512, 520 (8th Cir. 2000). If the instructions, taken as a whole, fairly and adequately submitted the issues to the jury, we will affirm. United States v. Wright, 246 F.3d 1123, 1128 (8th Cir. 2001). If the instructions were erroneous, we will reverse only if the error affected the defendant's substantial rights. Id.

A.

Lalley argues that the district court erred by giving the jury a willful blindness instruction. To obtain a conviction for conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (h), the government must prove that the defendant conspired to knowingly conceal or disguise the nature, location, source, ownership, or control of the proceeds of a specified unlawful activity, knowing that the property involved represented the proceeds of some form of unlawful activity. Over Lalley's objection, the district court instructed the jurors that Lalley could be found to have acted "knowingly" if they found beyond a reasonable doubt that Lalley "was aware of a high probability that the checks represented the proceeds of some form of unlawful activity and that he deliberately avoided learning the truth."

Lalley argues that this instruction is at odds with Ratzlaf v. United States, 510 U.S. 135 (1994), suggesting that Ratzlaf advanced the proposition that when a defendant engages in otherwise unlawful activity, the government must prove that the defendant did so with the actual understanding that his actions were unlawful. We are unpersuaded. In Ratzlaf, the Supreme Court simply recognized that in certain situations, Congress may alter the usual rule that ignorance of the law is no defense to a criminal charge. 510 U.S. at 149. With the money laundering provisions at issue

here, there is no indication that Congress intended the statute's scienter requirements to be satisfied only by proof of actual knowledge. Indeed, the legislative history of 18 U.S.C. § 1956 confirms that Congress intended the "'knowing' scienter requirements [of the statute] to be construed, like existing 'knowing' scienter requirements, to include instances of 'willful blindness.'" S. Rep. No. 99-433, at 9-10 (1986).

Lalley next argues that the district court should not have given the willful blindness instruction because the facts made available to him did not suggest that criminal activity was afoot, citing United States v. Barnhart, 979 F.2d 647, 652 (8th Cir. 1992). To evaluate this claim, we must view the record in the light most favorable to the government, drawing all reasonable inferences in the government's favor. See United States v. Hiland, 909 F.2d 1114, 1131 (8th Cir. 1990). At trial, Godfrey testified that Lalley "always kept his share" of the checks he cashed, sometimes as much as twenty percent. He said that Lalley quizzed him about where the money was coming from and about the payroll checks and that Lalley said he "didn't want to hear no more" when told Knudsen was sending the funds from Oglala Lakota College. It is reasonable to infer from this evidence that if Lalley did not know that the checks he cashed for Godfrey were proceeds of an unlawful scheme involving the College, it was only because he deliberately chose to remain ignorant. Even if Lalley did not receive as much money for the check cashing as Godfrey claimed,[3] evidence of other suspicious facts, including the sizable amount of money being turned into cash at the bar by Godfrey, an individual without a steady job who endorsed and cashed at least ten other persons' payroll checks, coupled with Lalley's admission that he took an "[o]ut of sight, out of mind" attitude about Godfrey's check cashing sufficiently supports an inference of willful blindness. Cf. United States v. Gonzales, 90 F.3d 1363, 1371 (8th Cir. 1996) (evidence of defendants' failure to investigate source of funds exceeding

---

[3]Lalley maintained that Godfrey gave him only $1,000 on two occasions and once let him keep $4,000 when he had insufficient funds to pay Godfrey back for a $10,000 check he was holding.

their legitimate incomes and their connection to transactions in which they did not use correct names warranted willful blindness instruction).

Lalley further contends that the district court's instruction allowed the jury to convict him on a negligence theory. Because the district court specifically charged the jury that "a showing of negligence, mistake, or carelessness is not sufficient to support a finding of knowledge," we reject this argument. See United States v. Uphoff, 232 F.3d 624, 626 (8th Cir. 2000). The district court did not abuse its discretion by giving a willful blindness instruction.

B.

Lalley next claims that the district court's instructions did not adequately advise the jury of the elements of the offense and the government's burden of proof. The indictment charging Lalley alleged that the conspiracy to commit money laundering involved the specified unlawful activities of theft and bribery concerning programs receiving federal funds in violation of 18 U.S.C. § 666 (1994), and transportation of stolen securities and money in violation of 18 U.S.C. § 2314 (1994). In accord with the indictment, the district court's instructions to the jurors included charges on general conspiracy law, on the specific elements of conspiracy to commit money laundering, and on the law applicable to section 666 and section 2314 violations. Lalley argues that the combination of these instructions confused the jurors and denied him the right to a unanimous verdict. He also points out that the instructions concerning conspiracy to commit money laundering and §§ 666 and 2314 did not separately refer to the government's burden of proof.

Having reviewed the instructions as a whole, we conclude there is no reversible error. The district court twice instructed the jurors that their verdict had to be unanimous, and we have repeatedly held that a general unanimity instruction is usually sufficient to protect a defendant's Sixth Amendment right to a unanimous verdict.

-6-

United States v. Davis, 154 F.3d 772, 783 (8th Cir. 1998) (mere fact that instruction could conceivably permit jury to reach non-unanimous verdict insufficient to require reversal when general unanimity instruction given). Furthermore, the district court clearly instructed the jury that the defendant was presumed to be innocent and that this presumption could be overcome only if the government proved beyond a reasonable doubt each essential element of the crime charged. Although the district court's instructions may not have negated every potential for confusion, we believe that, taken together, they fairly and adequately conveyed the issues to the jury. The district court did not abuse its discretion.

## II.

Lalley challenges a number of the district court's sentencing determinations: its three-level aggravating role enhancement imposed under U.S.S.G. § 3B1.1 (2000), its denial of his requests for mitigating role and acceptance of responsibility reductions, and its decision not to depart downward on his sentence. We review a district court's interpretation of the Sentencing Guidelines de novo and its factual determinations for clear error. United States v. Moore, 212 F.3d 441, 445 (8th Cir. 2000). A district court's discretionary decision not to depart from the Guidelines, however, is unreviewable unless the district court had an unconstitutional motive or erroneously determined that it lacked authority to consider a particular mitigating factor. United States v. Navarro, 218 F.3d 895, 897 (8th Cir. 2000).

## A.

Lalley argues that the district court erred in increasing his offense level pursuant to U.S.S.G. § 3B1.1(b) because he did not control or supervise any participant in the offense. Section 3B1.1 (a) and (b) require sentencing courts to increase the offense levels of defendants who were organizers, leaders, managers, or supervisors of a criminal activity that involved five or more participants, or was otherwise extensive.

The commentary to section 3B1.1 states that to qualify for the adjustment, "the defendant must have been the organizer, leader, manager, or supervisor of <u>one or more other participants</u>" in the offense, but that "[a]n upward departure may be warranted, however, in the case of a defendant who . . . exercised management responsibility over the property, assets, or activities of a criminal organization."  U.S.S.G. § 3B1.1, comment. (n.2) (emphasis added).

In this case, the district court concluded that the following findings warranted a three-level adjustment under section 3B1.1(b):

> [T]he conduct of the defendant and Godfrey was such that they formed an integral part of the conspiracy scheme by laundering [the] funds in small amounts, which were small enough to avoid the triggering of currency and action required by banks where the amount is in excess of $10,000 or is otherwise suspicious.  Basically, Godfrey took the money to the defendant who assisted him in converting that money to cash.  And as such, was an operator and did manage the transfer of the funds and did make management decisions in that regard and the part could be said the $630,000 was something less than [sic] otherwise extensive operation, it represents about 25 percent of the total amount of money that was stolen from the Oglala Lakota College.

This finding certainly goes to the extensiveness of the operation, but it does not demonstrate that Lalley was the manager or supervisor of one or more other participants.  Accordingly, the necessary factual predicate for a section 3B1.1(b) adjustment has not been established.

We explained the necessity of such a finding in <u>United States v. McFarlane</u>, 64 F.2d 1235, 1238-39 (8th Cir. 1995), when we described the amendment to the section 3B1.1commentary effective November 1, 1993, which added the language that to qualify for the adjustment the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants.  <u>Accord</u> <u>United States v. Padilla-Pena,</u>

129 F.3d 457, 469-70 (8th Cir. 1997); and United States v. Del Toro-Aguilera, 138 F.3d 340, 343 (8th Cir. 1998).  Because the district court failed to make the essential finding that Lalley exercised the necessary control over one other person, we must vacate the sentence and remand for resentencing.  The court may, if it deems it appropriate, consider whether or not an upward departure is warranted.  See U.S.S.G. § 3B1.1, comment. (n.2) (upward departure possible where defendant managed property, assets, or activities of a criminal organization).

B.

Lalley next contends that the district court erred in not reducing his base offense level for playing a mitigating role in the offense and in not awarding him a two-level reduction for acceptance of responsibility.  Both of these determinations are factual in nature and must be upheld unless clearly erroneous.  See United States v. Hafiz, 129 F.3d 1011, 1012 (8th Cir. 1997) (mitigating role adjustment); United States v. Karam, 37 F.3d 1280, 1286 (8th Cir. 1994) (acceptance of responsibility).  To conclude that a determination is clearly erroneous, we must be left "with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).  If the district court's account of the evidence is plausible in light of the record viewed in its entirety, it may not be disturbed on appeal.  See Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985).  Having carefully reviewed the record, we are not left with the definite and firm conviction that the district court was mistaken in either determination.  The record supports a finding that Lalley was integrally involved in a conspiracy with Godfrey for several years and that Lalley retained sizable percentages of the checks he cashed.  We also agree with the district court that this evidence indicates that Lalley was less than forthright to the jury about his involvement in the offense, a position inconsistent with his claim that he accepted responsibility for his actions. We therefore conclude that the district court did not commit clear error in denying Lalley's requests for mitigating role and acceptance of responsibility reductions.

C.

Lalley last argues that the district court erred by denying his request to depart downward on his sentence. He does not allege, however, that the district court erroneously believed it was without discretion to allow the departure. Nor does he contend that the district court had an unconstitutional motive in denying his request. Absent such grounds, we cannot review the district court's decision not to depart downward. See Navarro, 218 F.3d at 897-98.

* * * * *

For these reasons, we affirm Lalley's conviction, but vacate his sentence and remand for resentencing consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.