# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3809

_____

United States of America,          *

                                  *

      Plaintiff - Appellee,     *

                                  *  Appeal from the United States

v.                       *  District Court for the

                                  *  District of South Dakota.

Thomas P. Lalley,         *

                                  *

      Defendant - Appellant.   *

_____

Submitted:  May 13, 2002

Filed:  January 28, 2003

_____

Before WOLLMAN, BRIGHT, and JOHN R. GIBSON, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Thomas Lalley is before us once again, this time after the district court[1] resentenced him to seventy months' imprisonment. In an earlier decision, we affirmed Lalley's conviction for conspiring to commit money laundering, United States v. Lalley, 257 F.3d 751, 755-56 (8th Cir. 2001). However, we reversed Lalley's original sentence because the district court had increased Lalley's offense level for acting as an organizer, leader, manager, or supervisor of other participants, but the court had

_____

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

made no finding of fact that Lalley exercised control over another person, which was required for an adjustment in offense level for managerial role. Id. at 757-58. We remanded for resentencing, at the same time instructing the district court that an upward departure might be warranted if Lalley had managed property, assets, or activities of a criminal organization. Id. at 758. On resentencing, the district court did in fact choose to depart upward for management of property of a criminal organization, and the court imposed a seventy-month sentence. Lalley argues that there was no factual basis for the upward departure. We affirm the sentence imposed.

In our first opinion we recounted the story of Lalley's crime at greater length than is necessary here. See 257 F.3d at 753-54. Lalley was the owner of Theodore's Bar and Grill in Omaha, Nebraska. One of his regular customers, Jerry Godfrey, became involved in a scheme to embezzle money from Oglala Lakota College by depositing checks from the college into a bank account for a fictitious company. Godfrey needed a way to withdraw cash from the bank account without triggering federal reporting requirements, which he believed would apply to amounts of $5,000 or more. Godfrey told Lalley that he feared his bank would become suspicious if he withdrew $4,900 every day, and he asked Lalley to cash checks for him at Theodore's. Lalley agreed.

Over the next several years, Godfrey wrote more than sixty checks to the bar for amounts that were sometimes as high as $20,000. Godfrey also negotiated stolen Oglala College payroll checks by forging the payees' names and cashing them at Lalley's bar. Lalley would then stamp the checks for deposit and add them to the day's receipts for the bar. Lalley delivered the cash to Godfrey by writing "cash change orders" to receive cash in smaller, non-reportable amounts from the bar account. Godfrey explained at trial that if, for example, he brought in a $20,000 check, Lalley would keep $2,000 and give the rest to Godfrey in cash payments of $3,000 to $5,000 over the next several days. However, Lalley's share was not fixed at ten percent; rather, Godfrey's testimony supports the conclusion that Lalley had

discretion in deciding how much money to keep and when and in what amounts to pay the remainder of the proceeds to Godfrey. Godfrey said that Lalley usually took ten to twenty percent of the proceeds of each check, although the amounts he kept varied. Godfrey stated at one point that Lalley might keep as much as $6,000 out of a $20,000 check. Lalley kept records of the transactions on a notecard in order to show how much he had paid Godfrey, but Godfrey did not keep records. At sentencing, there was evidence that between 1991 and 1995, Lalley drew 216 checks on his business account to convert about $630,000 to cash.

On resentencing, the district court focused on whether an upward departure was appropriate for management of the property of a criminal organization. See U.S.S.G. § 3B1.1, comment. (n.2) (2002) ("An upward departure may be warranted. . . in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization."). The government argued that once Godfrey turned over the checks to Lalley, Lalley controlled the assets of the conspiracy in that Lalley alone had signature authority on the account, and he determined when and in what amounts to disburse cash to Godfrey:

> Mr. Lalley was the only one who controlled that money once it was brought to him. He was the only one who had signature authority on his own bank account. He was the one who determined what to do with those checks. He took the 73 checks that came to him and turned around and wrote 216 checks on his own account to convert that money. He's the one who made the decision when and how much cash he would give back to Jerry Godfrey.

The district court accepted this reasoning and determined that it provided a basis for an upward departure:

> Now, counsel for the defendant would attempt to convince the Court that the receiving of the money, the taking of the money to the bank, the

returning of all or part of the money taken after it was– after the money was laundered through the bank is not management. There were over $600,000 worth of checks, 70-some checks over a period of a number of months that the defendant did carry to the banks–bank, reduce in amount so that they could not be traced, and if that is not management of the property in that sense, the Court would be in error. But I believe, based upon the total record in this case and as the Trial Court, that there was management of this property and the assets, $600,000-plus assets, and certainly they constituted activities of this criminal conspiracy.

The court departed upward two levels, resulting in a range of sixty-three to seventy-eight months. Within that range, the court selected a sentence of seventy months.

Lalley contends that there was no factual basis for the upward departure since the facts show no management of property that is not inherent in the offense of money laundering.

We review a district court's decision to depart under the unitary abuse of discretion standard of review prescribed in <u>Koon v. United States</u>, 518 U.S. 81, 98-100 (1996). Departure is appropriate only if the case presents an "aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b) (2000); <u>United States v. Sample</u>, 213 F.3d 1029, 1032 (8th Cir. 2000). We must also determine whether the district court based its decision to depart on a factor that is encouraged, discouraged, or forbidden by the Sentencing Guidelines. <u>Sample</u>, 213 F.3d at 1032. Here, the district court relied on a factor, management of the property of a criminal enterprise, that is specifically mentioned as a basis for departure in guideline commentary, § 3B1.1 comment. (n.2). This commentary is sufficient to establish that the Commission did not take the property-management factor into account in formulating the guidelines, <u>United States v. McFarlane</u>, 64 F.3d 1235, 1239 (8th Cir. 1995), and the commentary has also been interpreted as encouraging departure on the basis of this factor. <u>United States v. Cali</u>,

87 F.3d 571, 580 (1st Cir. 1996) ("Section 3B1.1 departures are clearly encouraged by the Commission.").

The question in dispute is whether the district court's decision to depart on the basis of management of the assets of a criminal organization is supported by the facts of this case. We defer to the district court's discretion on this question. See Sample, 213 F.3d at 1032. Nevertheless, we still examine the record to determine whether it supports the district court's factual conclusions. Id. at 1033.

The district court in this case determined that Lalley's exercise of decision-making authority over when and in what amounts to disburse cash was "management" of the conspiracy's property. The record shows that Lalley did indeed decide when and in what amounts to withdraw the money from the bank, and even to some extent decided what amount he would keep. The extent of Lalley's control over the assets is also shown by Godfrey's testimony that Lalley kept an accounting of their transactions, whereas Godfrey did not. Exercise of such discretion is not inherent in the offense of money-laundering for which Lalley was convicted. See 18 U.S.C. §§ 1956(a)(B)(i), (h) (1994). Exercise of discretion or decision-making authority is strong evidence of participation as an "organizer or leader," as that term is used in U.S.S.G. § 3B1.1, see United States v. Howard, 235 F.3d 366, 371 (8th Cir. 2000), so it would certainly be probative of "management," which denotes a lesser level of responsibility. See Cali, 87 F.3d at 581 (affirming departure for management of assets where defendant "exercised discretion or control over the organization's information."). The district court could well decide that Lalley's conduct met the description of "management of assets" in comment 2 to section 3B1.1. There is a factual basis for the district court's decision that Lalley's conduct fell within an encouraged ground for departure. We must therefore defer to the court's discretion to depart.

We affirm the sentence imposed by the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.