# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3952

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Quintin L. Brown, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: September 10, 2002

Filed: November 22, 2002

_____

Before HANSEN, Chief Judge, RICHARD S. ARNOLD and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Quintin L. Brown appeals his conviction and sentence for conspiring to distribute five hundred or more grams of cocaine, aiding and abetting the possession with intent to distribute five hundred or more grams of cocaine, and traveling in interstate commerce to promote the distribution of cocaine, all in violation of 21 U.S.C. §§ 841 and 846 and 18 U.S.C. §§ 2 and 1952. Brown argues the government's evidence was insufficient. He also raises three sentencing issues,

challenging the district court's[1] drug quantity finding and its assessment of two-level enhancements for obstruction of justice, based on a finding that Brown committed perjury at trial, and for his leadership role in the offense. We affirm.[2]

## I. Sufficiency of the Evidence.

Brown first argues that the trial evidence was insufficient to convict him of the three charges. We review the evidence in the light most favorable to the jury's verdict and reverse only if no reasonable jury could have found Brown guilty beyond a reasonable doubt. United States v. Pena, 67 F.3d 153, 155 (8th Cir. 1995).

Brown and Roger Clark exited a bus during a layover at the Greyhound Bus Station in Kansas City. Brown carried a black Concourse bag and Clark carried a black Rome tote bag. They set the bags together on the floor while Clark plugged cell phones into a nearby outlet and Brown walked to the cafeteria. Kansas City Detective Mark Sumpter approached Clark and began to introduce himself; Detective William Brown stood ten feet away. Brown returned from the cafeteria and after Detective Sumpter had identified himself as a police officer, Brown and Clark agreed to answer questions. Both Brown and Clark produced valid California driver's licenses. Clark

---

[1]The HONORABLE GARY A. FENNER, United States District Judge for the Western District of Missouri.

[2]Brown also argues that his conviction under 21 U.S.C. § 841 violates Apprendi v. New Jersey, 530 U.S. 466 (2000). This contention is without merit. The indictment charged violations of § 841 involving five hundred or more grams of cocaine. The jury convicted Brown of those charges. His 293-month sentence was less than the forty-year maximum sentence prescribed for a violation involving that quantity. Thus, neither his conviction nor his sentence violated Apprendi. See 21 U.S.C. § § 841(b)(1)(B)(ii); United States v. Hernandez, 299 F.3d 984, 992-93 (8th Cir. 2002); United States v. Sprofera, 299 F.3d 725, 728-29 (8th Cir. 2002) (rejecting facial challenge to § 841).

produced two bus tickets from Oakland, California, to Charleston, South Carolina. The tickets had been paid for in cash and were issued in the names of "Mr. Roger O." and "Roger" some forty minutes prior to the bus's departure from Oakland.

Detective Sumpter then asked about the two bags on the floor. Brown and Clark each said he had carried the Concourse bag off the bus. Neither claimed ownership of the Rome bag. Considering their answers evasive and inconsistent, the detectives took Brown, Clark, and the two bags to the customer service office, where a drug dog alerted to the Rome bag. A warrant search of the bag uncovered almost three kilograms of cocaine, packaged for distribution, and 105 grams of marijuana. In addition to the bus tickets, Clark was carrying claim tickets for three checked bags. A black Rome suitcase with a claim stub matching one of the three claim tickets contained clothing that would fit Brown, but not Clark. The other two claim tickets were for bags containing clothing that fit only Clark. Brown was carrying over $2,000 in cash and receipts evidencing a substantial jewelry purchase and rental car payments in South Carolina earlier that year.

At trial, the detectives described the foregoing events and testified that they recognized the itinerary and behavior as typical of two-man teams of drug traffickers. Detective Sumpter further testified that Brown gave inconsistent answers in a lengthy interview following his arrest. At one point, when Sumpter asked what Brown and Clark intended to do with the cocaine once they reached South Carolina, Brown replied, "I am not going to tell you where we were supposed to take the dope." He then leaned back in his chair, smiled, and said, "you almost had me."

Following the detectives, the government called Flinten Otis, who had shared a cell with Brown for over two weeks while Brown was awaiting trial. Otis testified that Brown described how he smuggled cocaine from California to South Carolina by airplane, bus, and automobile and attempted to recruit Otis as a driver on future trips for $5,000 per trip. Brown also expressed concern to Otis that the police would find

Brown's fingerprints on the cocaine. But Brown told Otis he was not concerned that Clark would testify for the government because Brown had paid $10,000 for Clark's attorney and because, if Clark did testify, "he could never go back to California again." Otis also testified that Brown became upset when Clark pleaded guilty to a drug trafficking conspiracy charge, rather than a possession charge, because that left Brown "still tied to the case."

Brown argues that Clark was in possession of the Rome bag when they exited the bus, and the government failed to prove that Brown either knew of or constructively possessed the drugs in that bag. We disagree. The events at the bus station, the evidence found on their persons and in their luggage, and the testimony of Flinten Otis combined to present the jury with ample evidence that Brown and Clark were traveling together, that Brown knew drugs were in the Rome bag, and that he and Clark were engaged in a conspiracy to distribute them. See United States v. Ivey, 915 F.2d 380, 384 (8th Cir. 1990) (elements of conspiracy to distribute drugs and aiding and abetting drug distribution); United States v. Fetlow, 21 F.3d 243, 247 (8th Cir. 1994) (elements of Travel Act violation).

## II. Sentencing Issues.

*A. Drug Quantity.* The police seized approximately three kilograms of cocaine from the Rome bag when Brown was arrested at the Kansas City bus station. In Brown's Concourse bag, the police found four car rental receipts from prior trips to South Carolina. At trial, Brown admitted he made four trips from California to South Carolina in the five months before his arrest. Brown told Detective Sumpter he was unemployed, yet he incurred significant travel expenses, drove rental cars substantial distances, and purchased expensive jewelry while in South Carolina. Flinten Otis testified that Brown described numerous drug trafficking trips to South Carolina and offered Otis $5,000 per trip to serve as Brown's driver on future trips. In calculating Brown's base offense level for sentencing purposes, the district court found that the

four prior trips were relevant drug trafficking conduct and estimated that Brown had distributed three kilograms of cocaine on each trip. Brown contends the resulting drug quantity finding of almost fifteen kilograms of cocaine was clearly erroneous.

The Guidelines expressly provide that drug quantities not specified in the count of conviction which were part of the same course of conduct may be considered in determining a defendant's offense level. For this purpose, if "the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." U.S.S.G. § 2D1.1 comment. (n. 12). "The court may make a specific numeric determination of quantity based on imprecise evidence, so long as the record reflects a basis for the court's decision." United States v. Roach, 164 F.3d 403, 413-14 (8th Cir. 1998) (citations omitted).

In this case, there was ample evidence from which the district court could find that Brown made four prior trips to South Carolina in the months immediately preceding his arrest for the purpose of distributing cocaine. From the travel expenses he incurred, the expensive jewelry he purchased, his offer to pay Otis $5,000 for future trips, and an unexplained $5,000 bank deposit that coincided with one of these trips, it was reasonable to infer that the unemployed Brown made these trips to engage in financially significant drug trafficking.

Brown correctly emphasizes that the record contains no evidence of the specific quantities involved in these prior trips. But we are unwilling to conclude that *no* quantity may therefore be reasonably estimated. The supply end of this drug trafficking conspiracy was located in California, the demand end in South Carolina, and the two conspirators were caught mid-route in Kansas City. Thus, more specific drug quantity evidence was not readily available to the government. In making its drug quantity calculation, the district court began by limiting the relevant conduct to four contemporaneous trips to South Carolina that had been established by documentary evidence and Brown's trial testimony. See U.S.S.G. § 1B1.3 comment.

(n.9(B)) (defining "same course of conduct" for relevant conduct purposes). The court then determined drug quantity by estimating that each prior trip involved approximately the same quantity of cocaine as the government seized at the Kansas City bus station. As the Guidelines required some approximation, and as no quantity estimate was more reasonable on this record, we conclude that the court's drug quantity finding was not clearly erroneous. Accord United States v. Oleson, 44 F.3d 381, 385-86 (6th Cir. 1995).

*B. Obstruction-of-Justice Enhancement.* At trial, Brown testified that he had no knowledge of the cocaine found in the Rome bag. He also denied the material aspects of Flinten Otis's testimony -- that Brown had described his drug trafficking activities in South Carolina, offered Otis a job distributing drugs in the future, hoped his fingerprints would not be found on the drugs in the Rome bag, and paid Clark $5,000 to plead guilty to a possession offense. Brown's presentence investigation report recommended that he be assessed a two-level increase for obstruction of justice based upon this false testimony. See U.S.S.G. § 3C1.1. Brown objected to the increase, arguing that "he exercised his constitutional right to a jury trial and testified truthfully at that trial, even though the jury chose to disbelieve him." At sentencing, neither party introduced evidence on this issue. The district court overruled the objection, explaining, "I believe the defendant did testify untruthfully and your objection to the enhancement for obstruction of justice is denied."

On appeal, Brown argues that he should not be penalized for exercising his constitutional right to testify in his own defense. The Supreme Court squarely rejected this objection to a § 3C1.1 obstruction-of-justice enhancement in United States v. Dunnigan, 507 U.S. 87, 96-98 (1993). Brown goes on to argue, more specifically, that the district court made only a general finding of perjury, thereby violating the Court's ruling in Dunnigan that, before imposing an enhancement based upon the defendant's perjury at trial, the sentencing court "must review the evidence

and make independent findings . . . of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury." 507 U.S. at 95.

In Dunnigan, the Court explained that independent perjury findings are important because some defendants "may give inaccurate testimony due to confusion, mistake or faulty memory," while others may testify on "matters such as lack of capacity, insanity, duress or self-defense" which may be truthful but "insufficient to excuse criminal liability." 507 U.S. at 95. Here, on the other hand, Brown testified on the central issues at trial, and the presentence report identified specific ways in which that testimony was contrary to the jury's verdict. We have repeatedly affirmed obstruction-of-justice enhancements, despite the absence of specific findings on the elements of perjury, when the evidence of the defendant's willfulness was "unequivocal" and "the record left no doubt that the defendant's false testimony at trial was not the result of confusion, mistake, or faulty memory." United States v. Esparza, 291 F.3d 1052, 1055 (8th Cir. 2002); see United States v. Simms, 285 F.3d 1098, 1101 (8th Cir. 2002); United States v. Taylor, 207 F.3d 452, 455 (8th Cir. 2000). Having heard the trial testimony, the district court overruled Brown's general objection to the relevant paragraphs of the presentence report. Its obstruction finding "is supported adequately by the record and thus was not clear error." United States v. Robinson, 217 F.3d 560, 565-66 (8th Cir.), cert. denied, 531 U.S. 999 (2000).

*C. Aggravating Role Enhancement.* Brown argues the district court committed clear error in imposing a two-level enhancement because he was "an organizer, leader, manager, or supervisor" of a criminal activity that involved fewer than five participants. U.S.S.G. § 3B1.1(c). We will uphold this enhancement if the defendant controlled at least one other participant in the drug trafficking offense. See Pena, 67 F.3d at 156-57; U.S.S.G. § 3B1.1 comment. (n.2).

At trial, detectives Sumpter and Brown testified that Brown seemed to be the leader when he and Clark were questioned and then detained at the Kansas City bus

station. This testimony was corroborated by Brown's cellmate, Flinten Otis, who testified that Brown said he organized numerous trips to carry drugs from California to South Carolina and paid operatives such as Clark to serve in supporting roles. On this record, the district court's finding that Brown was an organizer or leader of the criminal activity was not clearly erroneous.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.