**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 28, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

   Plaintiff-Appellee,

v.

MOUSA SIYAM,

   Defendant-Appellant.

No. 07-3352
(D.C. No. 06-CR-20008-JWL)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **TACHA, HOLLOWAY**, and **HOLMES**, Circuit Judges.

   Mousa Siyam was convicted of conspiracy to possess and possession of
marijuana with the intent to distribute. He appeals his conviction, arguing that
the district court committed plain error in allowing over 200 kilograms of
marijuana that was seized from his vehicle to be displayed in the courtroom
during his trial. He also claims that there was insufficient evidence to sustain the
jury verdict on both counts. Lastly, he challenges his sentence and contends that
the district court erroneously calculated the drug quantity attributable to him and

---

[*]   This Order and Judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

erroneously denied his request for a minor role adjustment.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We exercise jurisdiction under 28 U.S.C. § 1291 and **AFFIRM**.

## BACKGROUND

Mr. Siyam was a commercial limousine driver based in Atlanta, Georgia. In December 2005, he was stopped by Trooper Phillips of the Kansas Highway Patrol. Trooper Phillips had run the license tag on the limousine Mr. Siyam was driving and found the license tag to be registered to another vehicle.[1] Mr. Siyam was accompanied in the driver's compartment by Terrence Bennett, the vehicle's owner, and, in a separate, passenger compartment, by Alfonso Ramirez-Martinez. When he spoke to Mr. Siyam, the trooper immediately noticed an overwhelming smell of cologne and air freshener, which he knew from his experience could be used to mask drug odors. He also observed that Mr. Siyam was nervous: his hands were shaking, he appeared fidgety, and he did not fully answer questions. The trooper asked where they were coming from, and Mr. Siyam said they had been in Denver and were going to Ohio.

After issuing a warning, the trooper asked for consent to search the vehicle, which Mr. Bennett gave. When he opened the passenger door, the trooper could

---

[1] Approximately two hours earlier, Mr. Siyam had been stopped by another trooper. Because that trooper was experiencing symptoms that he believed were indicative of a stroke, he terminated the traffic stop without asking for consent to search the vehicle, even though the trooper found the information Mr. Siyam provided him to be suspicious.

smell raw marijuana. He found five duffle bags, which contained a total of 208.2 kilograms (approximately 460 pounds) of marijuana. He also found a can of air freshener and a small suitcase. Although Mr. Siyam and Mr. Bennett had denied having any luggage in the back of the vehicle, the trooper also discovered luggage belonging to both men. The trooper arrested all three men.

A Drug Enforcement Administration agent later interviewed Mr. Siyam. Mr. Siyam initially stated that he had been hired by a man named Luis to pick up a musician—apparently referring to Mr. Ramirez—in Tucson, Arizona, and to drive him to Columbus, Ohio. Mr. Siyam did not state that he had made other trips for Luis. The agent then interviewed Mr. Bennett and learned that they had made a similar trip for Luis in July, but there were only three duffle bags then, and that Mr. Siyam had made a trip for Luis prior to that. He also said that Mr. Siyam had been in contact with Luis throughout the trip. When the agent confronted Mr. Siyam with this information, Mr. Siyam became agitated and then admitted that he had made one prior trip. The agent then terminated the interview because he felt Mr. Siyam was being untruthful.

At trial, Mr. Ramirez testified, pursuant to a plea agreement, that he had been hired to accompany a load of marijuana from Arizona to Ohio in a limousine. The men who hired him loaded the duffle bags into the limousine. When the limousine stopped for gas during the trip, he first met Mr. Siyam, who opened the passenger door and told Mr. Ramirez to stay in the vehicle and that he could use a bathroom at another rest area. Mr. Ramirez said that he was in the limousine for 40 to 48 hours,

without stopping except for food, gasoline, and restroom breaks; he slept in the limousine.

Mr. Siyam also testified at trial. He said Luis had hired him to drive a fare from Arizona to Ohio in the past. As to the present trip, Mr. Siyam explained that they did not stop because Mr. Ramirez did not want to; said that he told Trooper Phillips they were coming from Denver because he had been asked where they "just" were; and said that he was very upset when he learned the client (i.e., Ramirez) had marijuana in the vehicle.

During Trooper Phillips's testimony, the government introduced the marijuana into evidence. It was removed after Mr. Siyam completed his cross-examination of the trooper. The government brought the marijuana back out for a portion of its closing argument. When a juror had allergy symptoms that were exacerbated by the marijuana, the government immediately removed it from the courtroom. The marijuana was displayed for no more than two hours in total during the trial.

The jury returned a guilty verdict on both counts. At sentencing, Mr. Siyam objected to the drug quantity calculation and the absence of a minor role reduction. The court overruled these objections. Mr. Siyam's offense level was 30, resulting in a 97-121 month Guidelines range. The court sentenced him to 97 months' imprisonment and indicated that regardless of the drug quantity objection, he would have received the same 97 month sentence. Sustaining Mr. Siyam's drug quantity objection would have given him an offense level of 28, which has a 78-97 month Guidelines range.

## DISCUSSION

### I.     Display of Evidence

Mr. Siyam first argues that the presence of the marijuana evidence in the courtroom during the trial unduly prejudiced his substantial rights. He contends that the marijuana smell was so pervasive that it "violated his due process rights under the Fifth Amendment and the protections in Fed. R. Evid. 403." Aplt. Br. at 15. Mr. Siyam concedes that there was no contemporaneous objection to the pervasiveness of the marijuana odor. Thus, plain error review applies.

To establish plain error, Mr. Siyam must establish that the district court (1) committed error, (2) that was plain, and (3) that affected his substantial rights. *United States v. Dazey*, 403 F.3d 1147, 1174 (10th Cir. 2005). If he demonstrates that all three conditions are met, he then must show that an exercise of the court's discretion is appropriate because the error affects the integrity, fairness, or public reputation of judicial proceedings. *Id.* at 1174, 1178. If Mr. Siyam demonstrates that the alleged error is a constitutional error, "we relax our analysis on the remaining elements of plain error review." *Id.* at 1174.

We need not resolve whether it was error to allow the marijuana to be physically present in the courtroom. Even assuming this was error, Mr. Siyam has not shown that the alleged error was "plain." For an error to be plain, it must be "clear or obvious under current, well-settled law." *Id.* (internal quotation marks omitted). In general, for an error to be clear or obvious under current,

well-settled law, "either the Supreme Court or this court must have addressed the issue. [Though], [t]he absence of such precedent will not . . . prevent a finding of plain error if the district court's interpretation was clearly erroneous." *United States v. Ruiz-Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003) (internal quotation marks and citation omitted).

Mr. Siyam has not pointed to any binding precedent from the Supreme Court or Tenth Circuit regarding whether it is error to allow marijuana to be physically present in the courtroom. Furthermore, other authorities do not offer clear guidance. Even from Mr. Siyam's perspective, there at best is one case from the Seventh Circuit, *United States v. Garcia*, 986 F.2d 1135 (7th Cir. 1993), that arguably suggests it was an abuse of discretion to permit the marijuana to remain in the courtroom. However, *Garcia* is distinguishable. In that case, the Seventh Circuit admonished the district court for permitting containers of marijuana to remain *open* during the *defendant's case-in-chief*. *Garcia*, 986 F.2d at 1141-42. Here, the marijuana was not in an open container. The marijuana presented by the government during the trial was repackaged, after forensic testing, in plastic bags with sealed ends. Further, the marijuana was displayed only during the direct and cross examinations of Trooper Phillips and part of the government's closing arguments.

We do not consider, however, the time the marijuana was displayed during Trooper Phillips's cross examination as part of the "total time of display." That is

-6-

because Mr. Siyam was advised by the district court that he could remove the marijuana at the conclusion of the government's direct examination, but he chose to not have it removed. Mr. Siyam thus effectively waived this part of his argument and we will not review it on appeal. *See United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007) ("[W]aiver is the intentional relinquishment or abandonment of a known right." (internal quotation marks omitted) (quoting *United States v. Olano*, 507 U.S. 725, 733(1993))); *United States v. Jones*, 530 F.3d 1292, 1298 n.1 (10th Cir.) ("Generally, 'there is no appeal from a violation of a *waived* right.'" (quoting *United States v. Aptt*, 354 F.3d 1269, 1281 (10th Cir. 2004))), *cert. denied*, 129 S. Ct. 583 (2008). Having marijuana displayed in sealed plastic bags only during the government's direct examination of its witness and part of its closing argument is clearly different from the situation where marijuana is displayed in an open container during the defendant's entire case-in-chief. Consequently, *Garcia* is distinguishable.

Other cases addressing this issue have concluded, under circumstances similar to the instant case, that the presence of marijuana was not prejudicial. *See United States v. Ramos Rodriguez*, 926 F.2d 418, 421 (5th Cir. 1991) (holding that the presence of 227 pounds of marijuana in the courtroom during trial was neither a violation of Fed. R. Evid. 403 nor a due process violation, because "[t]he jury did not view the marijuana for any unreasonable length of time; the Government's case lasted a mere four hours" and the defendant did not show that

the government acted in bad faith); *United States v. Dunn*, 961 F. Supp. 249, 251-52 (D. Kan. 1997) (holding that the odor of marijuana in the courtroom did not create an unfair prejudice where the marijuana was properly admitted into evidence, the marijuana packages were not open, the marijuana was not present during the defendant's case-in-chief, and the defendant was able to argue the difference in the odor-producing circumstances between what was presented in the courtroom and how it was found); *accord McKenzie v. State*, 208 S.W.3d 173, 179-80 (Ark. 2005) (holding that the odor of marijuana in the courtroom was not unduly prejudicial where the marijuana was removed from the courtroom at the end of the testimony of the three witnesses who had been in contact with it).

Given this state of the law, we cannot conclude that the alleged error was clear or obvious under current, well-settled law. Accordingly, we cannot find the district court committed plain error.

## II.    Sufficiency of the Evidence

Mr. Siyam next contends that there was insufficient evidence to support his conviction. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the government and affirm unless no reasonable jury, when presented with the trial evidence and all reasonable inferences therefrom, could find the defendant guilty beyond a reasonable doubt. *United States*

*v. Schaefer*, 501 F.3d 1197, 1199-1200 (10th Cir. 2007).[2] We do not view each piece of evidence in a vacuum; we consider the collective inferences drawn from the evidence as a whole. An inference is reasonable "only if the conclusion flows from logical and probabilistic reasoning." *United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995).

Mr. Siyam was convicted of (1) conspiracy to distribute and possess with

[2]      Mr. Siyam has argued for application of the plain error standard, citing our decision in *United States v. Cox*, 929 F.2d 1511 (10th Cir. 1991). Aplt. Br. at 18-19. Although he has insisted that his sufficiency of the evidence challenge is not waived, Mr. Siyam has indicated that the more-rigorous plain error standard should govern our review of the challenge because "Mr. Siyam did not renew his motion for judgment of acquittal *after the jury verdicts*." *Id.* at 18 (emphasis added). We appreciate Mr. Siyam's forthright approach. However, he has misread *Cox* and is mistaken about his obligations with respect to filing a motion for judgment of acquittal under Fed. R. Crim. P. 29. *Cox* addressed the situation where the "Defendant moved for a motion to dismiss based on insufficiency of evidence" after "the government rested," but then "[a]t the close of all the evidence" he did not "renew his earlier motion." 929 F.2d at 1513. In that circumstance, we determined that plain error review was appropriate. *Id.* at 1514; *see also United States v. Goode*, 483 F.3d 676, 681 n.1 (10th Cir. 2007) (en banc footnote) (clarifying that "a forfeited claim of insufficient evidence *must be* reviewed under the plain-error standard" (emphasis added)). *Cox*'s holding reflects an unremarkable stance, which appears to have been uniformly taken by other federal courts. *See, e.g.*, 2A Charles Alan Wright, *Federal Practice & Procedure* § 469, at 322-23 (3d ed. 2000) (noting "the rule that if the defendant does move for acquittal at the close of the government's case, but fails to renew the motion at the close of all the evidence, he has waived his earlier objection," but noting that "there is an escape from the [waiver] doctrine" that "[a]ll courts recognize" which allows them to "review the evidence and reverse if the error is bad enough"). Mr. Siyam, however, is not similarly situated to the defendant in *Cox*. He moved for a judgment of acquittal at the close of the government's case, R., Vol. VII, Tr. at 467; and then renewed the motion at the close of his case, *id.*, Vol. VIII, Tr. at 748-49, *and* also at the close of all of the evidence, *id.*, Tr. at 763-64. In order to preserve his challenge to the sufficiency of the evidence for appellate review, Mr. Siyam was not obliged under Fed. R. Crim. P. 29 to then take the additional step of renewing his motion after the jury verdict. Accordingly, plain error review is not appropriate here.

intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 846, with reference to 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii); and (2) possession with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii) and 18 U.S.C. § 2. In order to prove a defendant guilty of participating in a drug conspiracy under § 846, the government must prove (1) the existence of a drug conspiracy (i.e., an agreement to violate the drug laws); (2) the defendant knew of the conspiracy and its essential objectives; and (3) the defendant knowingly and voluntarily became a part of the conspiracy. *See United States v. Smith*, 534 F.3d 1211, 1221 (10th Cir.), *cert. denied*, 129 S. Ct. 654 (2008); *United States v. Green*, 175 F.3d 822, 832 (10th Cir. 1999). In order to prove a defendant guilty of possession with intent to distribute illegal drugs, the government must prove that the defendant "(1) knowingly possessed the illegal drug, and (2) did so with the intent to distribute it." *United States v. Triana*, 477 F.3d 1189, 1194 (10th Cir.), *cert. denied*, 127 S. Ct. 2928 (2007).

Although Mr. Siyam purports to challenge his convictions for the drug conspiracy and the substantive drug offense, his arguments focus exclusively on whether Mr. Siyam possessed the requisite knowledge of the drugs and the intent to distribute them. *See* Aplt. Br. at 20 ("The key issues for Mr. Siyam revolve around whether there was sufficient proof of knowledge and intent."). Therefore, it is appropriate for that focus to guide our analysis.

Mr. Siyam contends that the government failed to prove both knowledge and intent. We disagree. First, the totality of the evidence, in the light most favorable to

the government, supports the conclusion that Mr. Siyam had knowledge of the marijuana. A jury may infer that the driver of a vehicle has knowledge of drugs contained within it. *United States v. Gwathney*, 465 F.3d 1133, 1143 (10th Cir. 2006); *see also United States v. Badilla*, 419 F.3d 1128, 1132 n.1 (10th Cir. 2005) (stating the inference of knowledge of hidden drugs was supported where the driver owned the truck, the marijuana had an estimated value of at least $119,515, the hidden compartment was visible, and there was a large volume and weight of the drugs); *United States v. Cota-Meza*, 367 F.3d 1218, 1224 (10th Cir. 2004) (finding the jury could make an inference of knowledge of hidden drugs, *inter alia*, because the drugs were readily discoverable).

Here, Mr. Siyam was the driver of the limousine. The marijuana was easily discoverable. The marijuana was located in the passenger compartment of the limousine, stacked in five large duffle bags. The duffle bags contained a total of 208.2 kilograms of marijuana. A can of air freshener—a product often used to mask the odor of marijuana—and Mr. Siyam's luggage also were found in the passenger compartment with the marijuana. The amount of marijuana was significant: it had a street value of approximately $918,000. *Cota-Meza*, 367 F.3d at 1224 ("This court has repeatedly recognized that the value of drugs can support an inference of knowledge."); *see Badilla*, 419 F.3d at 1132 n.1 (noting that given the high value of contraband, it is unlikely that the owner of the contraband "would allow it to be stored and transported in a vehicle which is owned and driven by someone who

-11-

had no knowledge of its presence"); *see also United States v. Pollock*, 926 F.2d 1044, 1050 (11th Cir. 1991) (noting that one million dollars worth of cocaine supports an inference of knowledge of the contraband because "[a] jury reasonably could conclude that no drug smuggler would entrust a shipment worth a million dollars to an outsider"). Furthermore, Mr. Siyam's nervousness with regard to his interaction with the officer, when considered with the other evidence, could also support the inference that Mr. Siyam had knowledge of the marijuana. *See United States v. Zhang*, 458 F.3d 1126, 1128 (10th Cir. 2006) ("Testimony about [Defendant's] generally nervous behavior is another factor that the jury may have evaluated in considering the evidence presented.").

There also was other evidence to support the logical conclusion that Mr. Siyam was aware of the marijuana. Mr. Siyam lied to law enforcement about previous trips, lied about where they were coming from, and treated his passenger, Mr. Ramirez, in a manner that was not consistent with what would be expected, if the passenger had paid for the transport (i.e., telling the passenger when he could and could not take bathroom breaks). These facts, in total, support the conclusion that Mr. Siyam had knowledge of the marijuana in the limousine.

Second, "a jury may infer intent to distribute from the possession of large quantities of drugs." *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1131 (10th Cir. 2004); *see United States v. Poe*, 556 F.3d 1113, 1126 (10th Cir. 2009); *United States v. Delreal-Ordones*, 213 F.3d 1263, 1268 n.4 (10th Cir. 2000) ("[W]e have repeatedly stated that possession of a large quantity of narcotics is sufficient to

-12-

establish the element of intent to distribute."). Here, 208.2 kilograms of marijuana were seized incident to Mr. Siyam's arrest. This evidence, alone, was sufficient for the jury to infer that Mr. Siyam (with knowledge of the marijuana's presence) had the intent to distribute the drugs. Overall, there was sufficient evidence to show that Mr. Siyam had knowledge of, and the intent to distribute, the marijuana.

## III.  Procedural Reasonableness

Lastly, Mr. Siyam challenges his sentence and contends that the district court erroneously calculated the drug quantity attributable to him and erroneously denied his request for a minor role adjustment. We review a federal criminal sentence for reasonableness, giving deference to the district court under "the familiar abuse-of-discretion standard." *Gall v. United States*, 128 S. Ct. 586, 594 (2007); *see United States v. Gambino-Zavala*, 539 F.3d 1221, 1227 (10th Cir. 2008); *United States v. Smart*, 518 F.3d 800, 805 (10th Cir. 2008). "[R]easonableness includes both a procedural component, encompassing the method by which a sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence." *Smart*, 518 F.3d at 803; *see also Gall*, 128 S. Ct. at 597. Mr. Siyam only challenges the procedural reasonableness of his sentence.[3]  In

---

[3]  Mr. Siyam asserts in his brief that his sentence is not substantively reasonable. However, while he made an argument based on 18 U.S.C. § 3553 at sentencing, he does not advance any such argument on appeal. Instead, under the heading of substantive reasonableness in his brief, he argues that because his offense level should be lowered by the use of a lesser drug quantity and minor role reduction, his current sentence is unreasonable. This argument is not a

(continued...)

determining whether the district correctly calculated the recommended Guidelines range, we review the district court's legal conclusions de novo and factual findings for clear error. *United States v. Todd*, 515 F.3d 1128, 1135 (10th Cir. 2008).

## A. Drug Quantity

Drug quantity is a factual finding that we review for clear error. *United States v. Dalton*, 409 F.3d 1247, 1251 (10th Cir. 2005). We will reverse only if the district court's finding "was without factual support in the record or we are left with the definite and firm conviction that a mistake has been made." *Id.* (quoting *United States v. Ryan*, 236 F.3d 1268, 1273 (10th Cir. 2001)). "If the district court's account of the evidence is *plausible* in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (emphasis added).

"'The government has the burden of proving the quantity of drugs for sentencing purposes by a preponderance of the evidence.'" *Ryan*, 236 F.3d at 1273 (alteration omitted) (quoting *United States v. Hooks*, 65 F.3d 850, 854 (10th Cir. 1995)). "Narcotics need not be seized or tested to be held against a defendant at sentencing." *United States v. Verdin-Garcia*, 516 F.3d 884, 896

---

[3](...continued)
substantive reasonableness argument, but a procedural reasonableness argument.

(10th Cir.), *cert. denied*, 129 S. Ct. 161 (2008). In situations where the actual drugs underlying the drug quantity determination are not seized, "the trial court may rely upon an estimate to establish the defendant's guideline offense level so long as the information relied upon has some basis of support in the facts of the particular case and bears sufficient indicia of reliability." *Dalton*, 409 F.3d at 1251 (internal quotation marks omitted); *see Verdin-Garcia*, 516 F.3d at 896; *see also United States v. Garcia*, 994 F.2d 1499, 1508 (10th Cir. 1993) ("While the court may rely on a government estimate in approximating the quantity of drugs, the information underlying the estimate must possess 'a minimum indicia of trustworthiness.'" (citation omitted) (quoting *United States v. Cook*, 949 F.2d 289, 296 (10th Cir. 1991))); *cf.* U.S.S.G. § 2D1.1 cmt. 12 ("Where there is no drug seizure . . . the court shall approximate the quantity of the controlled substance.").

"[W]hen choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution." *United States v. Richards*, 27 F.3d 465, 469 (10th Cir. 1994) (internal quotation marks omitted). We have previously observed that "the need to estimate drug quantities at times is not a license to calculate drug quantities by guesswork." *Dalton*, 409 F.3d at 1251 (internal quotation marks omitted).

Nevertheless, this court has, in a variety of circumstances, upheld drug

quantity determinations based upon estimates. *See Garcia*, 994 F.2d at 1508 (collecting cases); *see*, *e.g.*, *United States v. Sturmoski*, 971 F.2d 452, 462 (10th Cir. 1992) (estimate based on amount of precursor chemicals seized); *Cook*, 949 F.2d at 295-96 (estimate based on witness testimony that defendant sold specified dollar amount of drugs over specified time period); *United States v. Short*, 947 F.2d 1445, 1456-57 (10th Cir. 1991) (estimate based on the characteristics of drug laboratory); *United States v. Shewmaker*, 936 F.2d 1124, 1130 (10th Cir. 1991) (estimate based on aerial observation of marijuana field); *United States v. Harris*, 903 F.2d 770, 778 (10th Cir. 1990) (estimate based on defendant's business records).

In *United States v. Brown*, 311 F.3d 886 (8th Cir. 2002), the police seized approximately three kilograms of cocaine from the defendant's bag upon arrest. The police also found four rental car receipts for prior trips along the alleged drug trade route. The defendant, at trial, admitted to making these four trips. The district court calculated the drug quantity attributable to the defendant by estimating that each of the four prior trips involved approximately the same quantity of drugs as was seized upon the defendant's arrest. *Id.* at 889.

The Eighth Circuit affirmed this calculation, noting that while there was no evidence of the specific quantities involved in the four prior trips, the district court's drug quantity estimate was reasonable and not clearly erroneous. *Id.*; *see also United States v. Oleson*, 44 F.3d 381, 385-86 (6th Cir. 1995) (finding that the

district court did not clearly err in estimating drug quantity by multiplying the amount of drugs seized upon arrest by the number of trips made, when there was no direct evidence of the precise quantity of drugs transported during the prior trips), *overruled on separate grounds by United States v. Reed*, 77 F.3d 139 (6th Cir. 1996) (en banc).

Here, the district court adopted the recommendation of the presentence report, which stated:

> The defendant is accountable for the 208.2 net kilograms of marijuana seized from five duffle bags on December 15, 2005. Additionally, it was reported that two other trips were made by the defendant for Luis LNU [Last Name Unknown] that were similar in nature. According to Bennett, in July 2005, the defendant transported three duffle bags from Arizona to Ohio for Luis LNU. It was estimated that each bag contained approximately 41.64 kilograms of marijuana [based upon the per bag quantity found during the December 2005 trip] which equates to approximately 124.92 net kilograms. Assuming the trip made with Cory LNU [in Summer 2004] was the same amount, 124.92 net kilograms of marijuana, the defendant is responsible for a total of 458 kilograms of marijuana which equates to a base offense level of 28. U.S.S.G. § 2D1.1(c)(6).

R., Vol. IX, ¶ 28 at 8 (Presentence Report, dated March 8, 2007) [hereinafter, "PSR"]. The district court limited the relevant conduct to only these three trips. There was evidence of a fourth trip, but there was no information regarding parties involved, money paid for the trip, or the circumstances of the trip. On appeal, Mr. Siyam does not contest the 208.2 kilograms of marijuana seized at his arrest. He only challenges the drug quantity estimated from the reported two

-17-

other trips—July 2005 and Summer 2004—made by him for Luis. After review of the record, we are convinced that the district court did not clearly err by attributing 249.84 kilograms of marijuana to Mr. Siyam for his involvement in the July 2005 and Summer 2004 trips.

Evidence was presented at trial that Mr. Siyam made a trip in July 2005 similar in nature to the trip he made in December 2005, when the officers seized 208.2 kilograms of marijuana from five duffle bags. The July 2005 trip involved only three duffle bags. The prosecutor produced evidence that Mr Siyam "had a made a trip to Tucson in July [with Mr. Bennett] and . . . they had transported a single Hispanic male to Columbus, Ohio, with three of [the same large, black, duffle bags used to transport the marijuana in December 2005]." R., Vol. VII, Tr. at 303-04 (Trial Tr., dated Jan. 16-19, 2007). Further, evidence showed that Mr. Siyam and Mr. Bennett were working for Luis, the same individual who supplied the marijuana for the December 2005 trip. Mr. Siyam's testimony corroborated this evidence. He testified that in July 2005 Luis hired him to make a trip from Tucson, Arizona to Columbus, Ohio and that he recruited Mr. Bennett to make the trip with him.[4] On appeal, Mr. Siyam does not contest that the trip occurred, or the

---

    [4]    At sentencing, the district court found with respect to different aspects of Mr. Siyam's trial testimony that he willfully obstructed justice by committing perjury. R., Vol. V, Tr. Tr. at 1097 (Sentencing Proceeding, dated Nov. 29, 2007). The district judge noted that, "[Mr. Siyam's] testimony was that he had no knowledge that there was marijuana in his [sic] back of his vehicle. I believe he knowingly testified falsely about that." *Id.*

number of duffle bags involved. He only challenges the assumption concerning the contents of the duffle bags and their approximate weight.

There was clear record support, however, for the district court's determinations about the contents of the duffle bags and their weight. The evidence relating to the similarity in modus operandi between the July 2005 and December 2005 trips—that is, evidence describing trips involving Mr. Siyam and Mr. Bennett, the same route, the same supplier, and similar sized, black duffle bags—was sufficient to support the conclusion that the duffle bags on the July 2005 trip contained marijuana. Further, each duffle bag seized in December 2005 contained approximately 41.64 kilograms of marijuana. Given the similar pattern of operation, evidence that the July 2005 trip used large, black duffle bags similar to those used in the December 2005 trip was sufficient to support the conclusion that the same amount of marijuana was in each bag in the July 2005 trip. *See United States v. Rodriguez*, 525 F.3d 85, 107-09 (1st Cir. 2008) (estimating the quantity of drugs attributable to the defendant by weighing the contents of fifty bags of cocaine acquired by the government through an undercover operation, approximating the amount of cocaine in each bag, and approximating the number of bags attributable to defendant during the time in question);[5] *see also* U.S.S.G. §

---

[5] While the First Circuit found that the district court clearly erred in finding that six sellers worked every day selling cocaine, instead of three workers, the general method of estimating the drug quantity was held to be proper. *Rodriguez*, 525 F.3d at 108-09.

2D1.1 cmt. 12 ("In [estimating the quantity of a controlled substance], the court may consider . . . *similar* transactions in controlled substances by the defendant . . . ." (emphasis added)).

The district court's findings concerning the July 2005 trip, therefore, were neither far reaching nor mere guesswork. They found support in the facts of this particular case. More specifically, the district court's finding was *plausible* in light of the record viewed in its entirety and we are not left with a *firm conviction* that a mistake has been made. Accordingly, we cannot say that the court clearly erred in attributing to Mr. Siyam 124.92 kilograms of marijuana (three bags, each containing 41.64 kilograms of marijuana) for his involvement in the July 2005 trip.

As for the Summer 2004 trip, evidence was presented at trial that Mr. Siyam made a trip during this period similar in nature to the December 2005 trip. The Summer 2004 trip involved the same route as the December 2005 trip—that is, from Tucson, Arizona to Columbus, Ohio—and involved the same supplier, Luis. There was no evidence as to whether any duffle bags were transported in the Summer of 2004. However, there was evidence that Mr. Siyam was paid $6,000 for the trip—the same amount he charged Luis for the July 2005 trip, and similar to $6,500 he was paid for the December 2005 trip.[6]

---

[6] Mr. Siyam testified that he charged Luis $6,500, instead of $6,000,
(continued...)

Although this is a somewhat closer call than our decision regarding the July 2005 trip due to the absence of duffle-bag evidence, we conclude that the district court did not clearly err in finding that there was sufficient evidence to attribute 124.92 kilograms of marijuana to Mr. Siyam. We are not firmly convinced on this record that the district court committed a mistake in its drug quantity estimation. Evidence of a similar modus operandi between the Summer 2004 and December 2005 trips provided significant support for the district court's finding that on both trips Mr. Siyam was transporting drugs. Furthermore, the district court could have reasonably inferred from the similar amounts that Luis paid Mr. Siyam that, not only was Luis compensating Mr. Siyam for engaging in similar activity—that is, transporting drugs—but also that he was compensating Mr. Siyam for bearing a similar responsibility during the transport based upon a *similar quantity* of drugs. *See Brown*, 311 F.3d at 889; *Oleson*, 44 F.3d at 385-86. Indeed, the district court's attribution of the equivalent of only three duffle bags of marijuana to Mr. Siyam for the Summer 2004 trip was a conservative estimate, and properly so, which was based on the size of the July 2005 load rather than the December 2005 load of five duffle bags. *See Richards*, 27 F.3d at 469 (noting that "a court must err on the side of caution" (internal quotation marks omitted)). In sum, we conclude that the district court's drug quantity

---

[6](...continued)
for the December 2005 trip because of the increase in gas prices.

-21-

finding concerning the Summer 2004 trip was "plausible in light of the record viewed in its entirety." *Anderson*, 470 U.S. at 573-74 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). We cannot say, therefore, that the district court clearly erred in its drug quantity estimations concerning the July 2005 and Summer 2004 trips.

## B. Minor Role Reduction

A defendant may qualify for a two-level reduction for being a minor participant in criminal activity. U.S.S.G. § 3B1.2(b). To receive this reduction the defendant's role in the criminal conduct must be more than minimal but the defendant must be less culpable than most other participants. *Id.* § 3B1.2 cmt. n.5. The defendant has the burden of proving eligibility for such a reduction by a preponderance of evidence. *See United States v. Virgen-Chavarin*, 350 F.3d 1122, 1131 (10th Cir. 2003). A defendant's assertion that he played a minor role is not enough to overcome a district court's contrary finding under a clearly erroneous standard. *See id.*

Mr. Siyam's participation was not so minor as to make the district court's finding clearly erroneous. Mr. Siyam argues he is similar to a commercial bus driver who unknowingly transports a drug courier. However, the evidence supports the conclusion that Mr. Siyam was more involved than a commercial bus driver. Even though Mr. Siyam claimed not to know of the marijuana, the jury necessarily found to the contrary by adjudging him guilty. At best, we could consider Mr. Siyam a

courier. We have refused to adopt a per se rule that couriers are minor participants. *United States v. Ballard*, 16 F.3d 1110, 1115 (10th Cir. 1994). And, even under that characterization of his role, Mr. Siyam has failed to carry his evidentiary burden of establishing that he is the kind of courier that should be deemed a minor participant. Mr. Siyam coordinated his trip with Luis and was in contact with Luis about his progress. He also lied to the police to prevent discovery of the marijuana. The district court's conclusion that he is not entitled to this reduction was properly supported by the record.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.


Entered for the Court


Jerome A. Holmes
Circuit Judge