# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-4420

_____

United States of America

*Plaintiff - Appellee*

v.

Mark Arlin Hammerschmidt

*Defendant - Appellant*

_____

No. 16-4422

_____

United States of America

*Plaintiff - Appellee*

v.

Ornella Angelina Hammerschmidt

*Defendant - Appellant*

_____

Appeals from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 20, 2017
Filed: February 2, 2018

_____

Before WOLLMAN and SHEPHERD, and GOLDBERG,[1] Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Mark Arlin Hammerschmidt (Mark) pleaded guilty to two counts of conspiracy to defraud the United States in violation of 18 U.S.C. § 286 and was sentenced to 135 months' imprisonment. Ornella Angelina Hammerschmidt (Ornella) pleaded guilty to one count of making false claims for refunds in violation of 18 U.S.C. § 287 and was sentenced to 48 months' imprisonment. The Hammerschmidts appeal from their sentences. Mark argues that the district court erred in calculating his offense level and his criminal history points. Ornella argues that the district court erred in calculating her offense level and in imposing a sentence above the range set forth in the United States Sentencing Guidelines Manual (Guidelines or U.S.S.G.). Because the district court did not make the findings required to increase Mark's offense level for being a manager or supervisor and because it should not have assessed criminal history points for a 2008 purged disposition of civil contempt, we vacate Mark's sentence and remand for resentencing. We affirm Ornella's sentence.

## I. Background

This case involves two schemes to obtain fraudulent tax refunds from the United States Department of the Treasury through the Internal Revenue Service (IRS). The first scheme involved the Hammerschmidts' providing accounting and tax preparation services through their businesses, American Group and Liberty Tax. They also offered immigration services, with Ornella Hammerschmidt falsely claiming that she was an attorney.

_____

[1]The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation.

-2-

From January 2011 through February 2013, the Hammerschmidts completed income tax returns for taxpayers in Florida and Minnesota, many of whom were immigrants who did not speak English. The Hammerschmidts reported false information on the returns to qualify the taxpayers for additional refunds. The false information included incorrect filing statuses, false household-help income, fictitious businesses and business losses, and fraudulent tax credits. The taxpayers were not aware that the Hammerschmidts were making false statements on their returns. Ornella sometimes signed the returns on behalf of the taxpayers, and American Group did not always provide clients with copies of their returns. The Hammerschmidts did not identify themselves on the returns as paid tax preparers.

Most of the refunds were deposited directly into a bank account managed by the Hammerschmidts, who thereafter deducted fees and remitted partial refunds to the taxpayers. All told, the first scheme involved twenty-two federal tax returns that claimed more than $95,000 in fraudulent refunds, on which the IRS paid out more than $45,000. The first scheme also involved Minnesota tax returns that claimed $110,000 in fraudulent refunds, on which the Minnesota Department of Revenue suffered no identifiable actual loss.

In the second scheme, Mark conspired with others to file false federal income tax returns on behalf of Guatemalan citizens (the Guatemalan conspiracy). From 2010 until February 2012, co-conspirators provided Mark with identifying information of Guatemalan citizens, which he used to obtain individual taxpayer identification numbers. Mark then filed fraudulent federal income tax returns for multiple tax years in the names of the Guatemalan citizens, none of whom resided or worked in the United States. The refunds were sent to addresses or deposited in bank accounts associated with Mark. Mark filed more than five hundred of these fraudulent federal tax returns, claiming approximately $1.8 million in fraudulent refunds, on which the IRS paid out $1,787,621.

A federal grand jury returned a thirty-seven count indictment. Counts 1 through 23 charged Mark and Ornella with offenses related to the first scheme. Counts 24 through 37 charged only Mark and related to the second scheme.

Mark pleaded guilty to the two counts of conspiracy to defraud the United States (counts 1 and 24), and Ornella pleaded guilty to one count of making a false claim for refunds (count 18). While released on bond pending sentencing, the Hammerschmidts violated a condition of their release by participating in the preparation of tax returns. Ornella helped another tax preparer complete a fraudulent tax return for an undercover agent, who posed as a tax client. The district court placed Mark on location monitoring with home confinement and revoked Ornella's release, concluding that Ornella's "egregious violation of her conditions of release and her involvement in advising the undercover agent to file a fraudulent tax return support a determination that her release must be revoked." D. Ct. Order of Apr. 19, 2016.

The district court determined that Mark's total offense level was 31, that his criminal history category was III, and that his advisory sentencing range was 135 to 168 months' imprisonment. To impose a sentence of 135 months' imprisonment, the district court sentenced Mark to the statutory maximum term of imprisonment of 120 months on each count, see 18 U.S.C. § 286, with 105 months on count 24 to be served concurrently with count 1 and the remaining 15 months to be served consecutively.

The district court determined that Ornella's total offense level was 16, that her criminal history category was II, and that her advisory sentencing range was 24 to 30 months' imprisonment. The district court varied upward from the Guidelines sentencing range and imposed a 48-month sentence.

## II.  Mark Hammerschmidt

Mark argues that the district court erred by applying the aggravating role adjustment set forth in Guidelines § 3B1.1(b) and increasing his offense level by 3 for being a manager or supervisor in the Guatemalan conspiracy.  He contends that the adjustment applies only if he managed or supervised at least one other participant, a fact that the government failed to prove by a preponderance of the evidence.  The government maintains that the adjustment was appropriate because Mark exercised management responsibility over the activities of the Guatemalan conspiracy, even if he did not exercise control over another participant.  We review *de novo* the question whether the government was required to prove that Mark managed or supervised at least one participant in the Guatemalan conspiracy.  See United States v. Reid, 827 F.3d 797, 800-01 (8th Cir. 2016) ("We review the district court's interpretation of the sentencing guidelines *de novo* and its factual findings for clear error.").

Guidelines § 3B1.1 instructs the district court to increase the defendant's offense level if the defendant served as an organizer, leader, manager, or supervisor in committing the offense.  There has long been confusion about whether a defendant must exercise some degree of control over another participant to qualify as an organizer, leader, manager, or supervisor for purposes of § 3B1.1.  To resolve a split that had developed among the courts of appeals, the United States Sentencing Commission adopted Amendment 500 in 1993.  U.S.S.G. app. C, amend. 500; see United States v. McFarlane, 64 F.3d 1235, 1237 (8th Cir. 1995) (noting the circuit split and citing cases).  The amendment added the following application note to § 3B1.1:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants.  An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management

responsibility over the property, assets, or activities of a criminal organization.

U.S.S.G. § 3B1.1 cmt. n.2.  The note thus clarified that a § 3B1.1 adjustment was appropriate only if the defendant had organized, led, managed, or supervised another participant.  See United States v. Fones, 51 F.3d 663, 668 (7th Cir. 1995) ("[T]his note now requires that a defendant have control over at least one participant of the criminal activity in order to be subject to a sentencing enhancement under § 3B1.1."); United States v. Capers, 61 F.3d 1100, 1110 (4th Cir. 1995) ("[A]n enhancement (as opposed to an upward departure) is the appropriate vehicle only for those defendants who controlled people.").

We conclude that for the § 3B1.1(b) adjustment to apply, the government was required to prove that Mark managed or supervised another participant in the Guatemalan conspiracy.  See United States v. Padilla-Pena, 129 F.3d 457, 470 (8th Cir. 1997) ("If the evidence does not support the finding that [the defendant] managed or supervised other participants, then her offense level could only be increased by means of a departure and not by means of an adjustment."); see also United States v. Irlmeier, 750 F.3d 759, 764 (8th Cir. 2014) ("[W]e have always required evidence that the defendant directed or procured the aid of underlings.") (quoting United States v. Rowley, 975 F.2d 1357, 1364 n.7 (8th Cir. 1992)).  Because the district court did not determine whether Mark managed or supervised another participant in the Guatemalan conspiracy, we must remand the case.  See United States v. Musa, 830 F.3d 786, 788-89 (8th Cir. 2016) ("[W]e remand the case to provide the district court the opportunity to clarify whether [the defendant] organized or led at least one other participant, and to identify what evidence in this record supports that finding.").

We are not persuaded by the government's argument that a footnote from United States v. Gaines allows us to uphold the application of the § 3B1.1(b) adjustment to Mark's offense level.  639 F.3d 423, 428-29 n.4 (8th Cir. 2011).

Although the Gaines footnote concluded that proof of control over another participant was not necessary to sustain a § 3B1.1 adjustment, it did not cite or otherwise address § 3B1.1 application note 2. Moreover, to the extent that the Gaines footnote conflicts with our earlier precedent, *e.g.*, United States v. Pena, 67 F.3d 153, 156-57 (8th Cir. 1995); McFarlane, 64 F.3d at 1237-38, we are bound by the decisions of the panels that predate Gaines.[2] See Owsley v. Luebbers, 281 F.3d 687, 690 (8th Cir. 2002) (per curiam) ("It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel.").

Mark next argues that the district court erred in determining his criminal history category. He contends that he should not have received criminal history points for a purged sentence for contempt that did not result in an adjudication of guilt or a definite sentence. The government agrees and has requested resentencing. We review *de novo* this issue of law. See Reid, 827 F.3d at 800-01 (standard of review).

In 2008, Mark was sentenced to "[s]erve 60 days in jail, with a purge of $1,500" for contempt of court, a misdemeanor, in the Orange County, Florida, Domestic Relations Court. Mark did not remember being charged with contempt, but believed that he likely was past due on child support payments. During the sentencing hearing, Mark proffered that he had paid the $1,500 purge amount and served only an hour in jail. The district court accepted those representations as true. Over Mark's objection,

---

[2]The footnote in Gaines relied on a statement in United States v. Brown, 311 F.3d 886, 890 (8th Cir. 2002), that "[w]e will uphold this enhancement if the defendant controlled at least one other participant in the drug trafficking offense." Our holding in Brown, however, was that the district court did not clearly err in finding that the defendant was an organizer, in light of evidence that he had organized cross-country transport and delivery of drugs and had "paid operatives . . . to serve in supporting roles." Id. at 891 (citing U.S.S.G. § 3B1.1 cmt. n.2; Pena, 67 F.3d at 157 ("The guidelines only require that [the defendant] supervised 'one or more other participants' to trigger this enhancement.")).

however, the district court added 2 criminal history points for the contempt disposition. Those 2 points raised his criminal history category from II to III.

Guidelines § 4A1.1(b) instructs the district court to add 2 points "for each prior sentence of imprisonment of at least sixty days." A "prior sentence" is defined as a "sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). Sentences for misdemeanor offenses of "contempt of court" or of "non-support" are counted under § 4A1.1 only in certain circumstances, including if the sentence was a term of imprisonment of at least thirty days. U.S.S.G. § 4A1.2(c)(1).

Mark's contempt disposition does not meet the definition of "prior sentence" because he purged his contempt by paying $1,500. Imprisonment in a case of civil contempt "is intended to coerce the defendant to do the thing required by the order." Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 442 (1911). The term of imprisonment is indefinite because the defendant can "end the sentence and discharge himself at any moment by doing what he had previously refused to do." Id. Here, Mark was behind in child support payments. Presumably, his arrest and hour-long imprisonment were intended to coerce him to pay. When he did pay the past-due amount, he purged his contempt and ended his sentence. Accordingly, he was never adjudicated guilty, and he did not receive a definite sentence. Because the contempt disposition was not a "sentence previously imposed upon adjudication of guilt," see U.S.S.G. § 4A1.2(a)(1), Mark should not have received the disputed criminal history points. See United States v. Pratt, 351 F.3d 131, 139-40 (4th Cir. 2003) (concluding that the defendant's six-month sentences for contempt were properly awarded criminal history points because the sentences "were 'for a definite period' and could not be purged by any affirmative act").

## III. Ornella Hammerschmidt

Ornella argues that the district court erred when it applied Guidelines § 2T1.4(b)(1)(B) and increased her offense level by 2 for being "in the business of preparing or assisting in the preparation of tax returns." Ornella claims that she "only occasionally or sporadically" assisted her husband in the preparation of tax returns and that the government presented no evidence that she profited from her assistance. Appellant Ornella's Br. 20. The record, however, belies these claims.

As part of the factual basis for her plea agreement, Ornella admitted that she and Mark operated a tax preparation business that they used to prepare and file more than 1,000 federal income tax returns. Ornella served as the vice president of the business, and it is undisputed that the business collected fees for its services. Moreover, Ornella continued to assist in the preparation of tax returns after she was indicted in this case. Ornella's conduct falls squarely within the application note that explains that § 2T1.4(b)(1)(B) "applies to persons who regularly prepare or assist in the preparation of tax returns for profit." U.S.S.G. § 2T1.4 cmt. n.2.

Ornella next argues that the district court erred in relying on "victim impact" as a reason for varying above the Guidelines sentencing range. According to Ornella, "[t]he district court did not elaborate on why victim impact was a basis for the upward variance, but [Ornella] contends the court relied on erroneous facts to support the variance." Appellant Ornella's Br. 26. On plain error review, she essentially asks us to assume that the district court relied upon erroneous facts to support the variance. See United States v. Phelps, 536 F.3d 862, 865 (8th Cir. 2008) ("If a defendant fails to timely object to a procedural sentencing error, the error is forfeited and may only be reviewed for plain error."). This we will not do.

The district court did not err in finding that Ornella's conduct had a serious impact on her victims. Ornella helped prepare and file fraudulent federal income tax

returns on behalf of tax and immigration clients. She made false statements on those returns to obtain fraudulent refunds. Ornella also falsely claimed to be an attorney who specialized in immigration, and she charged clients for immigration services that she did not provide. The conspiracies caused the IRS to suffer monetary loss. During the sentencing hearing, three victims spoke of the havoc wreaked in their lives because of the fraudulent tax returns that Mark and Ornella had filed for them and because of the errors that Mark and Ornella had made in their immigration cases. The government read a statement by a fourth victim. The record thus supports the district court's decision to rely on "victim impact" as a reason to vary above Ornella's Guidelines sentencing range.

We likewise find no plain error in the district court's reliance on Ornella's criminal history as a reason to vary above the Guidelines sentencing range. Ornella contends that the Guidelines adequately addressed her criminal history, but "[w]e have held that a district court may impose an upward variance based on facts already included in the advisory sentencing guidelines where the advisory guidelines do not fully account for those facts." United States v. Fiorito, 640 F.3d 338, 352 (8th Cir. 2011) (alteration in original) (quoting United States v. Jones, 509 F.3d 911, 914 (8th Cir. 2007)). Ornella began defrauding the government as early as 2002. Although the schemes varied, she continued to engage in fraudulent conduct until she was incarcerated. The district court adequately explained its reasons for the variance:

> The court has varied upward from the guidelines range because of defendant's continued course of fraudulent conduct dating back to 2002. And as set forth in the presentence report, this is defendant's second federal conviction for fraud-related conduct and the fourth-charged fraud offense. Further, although not charged with a crime for such conduct, the PSR establishes that between 2010 and 2014 defendant posed as an immigration attorney and charged immigration clients for services not provided. And, finally, the defendant committed the instant offense while on probation for another federal fraud conviction.

-10-

Sent. Tr. 30-31. Ornella's reliance on Guidelines § 4A1.3, Departures Based on Inadequacy of Criminal History Category, is misplaced. The district court did not depart on the basis of § 4A1.3, but rather varied from the Guidelines sentencing range after considering the sentencing factors set forth in 18 U.S.C. § 3553(a). See U.S.S.G. § 1B1.1 (setting forth the procedure to determine a defendant's sentence); see also Irizarry v. United States, 553 U.S. 708, 714 (2008) ("'Departure' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines.").

Finally, we do not address Ornella's argument that the district court erred by denying a mitigating role adjustment under Guidelines § 3B1.2. Ornella conceded the argument in her reply brief. See Appellant Ornella's Reply Br. 5. Nor do we address the additional arguments that Ornella raised for the first time in her reply brief and in a *pro se* document that she filed with the court on October 30, 2017. See United States v. Williams, 796 F.3d 951, 958 n.4 (8th Cir. 2015) ("[A]s a general rule we do not entertain arguments that are first raised in a reply brief."); United States v. Donnell, 596 F.3d 913, 925-26 (8th Cir. 2010) ("[W]e generally do not accept pro se motions or briefs when an appellant is represented by counsel.") (alteration in original) (quoting United States v. Barker, 556 F.3d 682, 690 n.3 (8th Cir. 2009)).

## IV. Conclusion

We vacate Mark's sentence and remand his case for resentencing. We affirm Ornella's sentence.

_____